ALONZO DANZELL & others *vs.* SOLOMON F. WEBQUISH & others.

A child of Indian parents, who was not born upon the lands belonging to the Herring Pond tribe of Indians and never resided thereon, whose father is not shown to have been a member of the tribe or to have ever resided on their lands, and whose mother, although a proprietor of those lands and born thereon, resides with her husband and children elsewhere, is not entitled to share in the division of those lands under the St. of 1869, c. 463, § 3.

APPEAL by the minor children of Deborah Danzell and of Mary Perry from a decree of the judge of probate, under the St. of 1869, c. 463, § 3, for the division of the lands held in common and belonging to the Herring Pond tribe of Indians.

The judge of probate ordered the division to be made equally among all persons, whether of full age or minors, of Indian descent, residing at Herring Pond, or who were born there, although now residing elsewhere ; including Deborah Danzell and her sister Mary Perry, who were born on those lands of Indian parents, and whose mother, Clarissa Joseph, was an Indian, and had all the rights of an Indian proprietor of Herring Pond Plantation ; and also including Clara Perry, a daughter of Mary, who was born at Herring Pond ; but excluding all the other children of Deborah Danzell and of Mary Perry, of whom the eldest, Alonzo Danzell, was seventeen years of age, and none of whom were born on the Herring Pond lands or ever resided there. Christopher Danzell, husband of Deborah and father of her children, is a colored man of Indian descent, but not a proprietor of Herring Pond Plantation, has no original right there, and resides with his family at New Bedford. His wife owns lands at Herring Pond in severalty, set off to her by the division made under the St. of 1850, c. 168, on some of which she has made improvements. She claims that she is intending at some time to return to Herring Pond to reside on her lands, but she has no present intention of returning there at any definite time. Mary Perry and her husband and family reside at Fall River. The case was submitted to the decision of this court upon the facts above stated.

*G. Marston*, for the appellants.

*C. G. Davis & E. S. Whittemore*, for the appellees.

GRAY, J.   The remnants of the Indian tribes, residing within the limits of the Commonwealth, having never been recognized by any treaties or executive or legislative acts of the government of the United States as independent political communities, were under the control of the legislature of the state.   *Worcester* v. *Georgia*, 6 Pet. 515, 580, 590, 593.   *United States* v. *Holliday*, 3 Wallace, 407, 419.   *The Kansas Indians*, 5 Wallace, 737. *United States* v. *Yellow Sun*, 1 Dillon, 271.   By the law of Massachusetts, until very recently, these Indians were not subjected to taxation, nor endowed with the ordinary civil and political rights of citizens, but were treated as the wards of the Commonwealth ; the title in the lands occupied by their tribes was in the state, and could not be alienated by them without the consent of the legislature ; and the use and improvement thereof by the Indians was regulated by the legislature from time to time at its discretion, all the earlier allotments being limited to short terms. Sts. 1788, *c.* 38; 1789, *c.* 52; 1796, *c.* 23 ; 1807, *c.* 109 ; 1809, *c.* 70 ; 1811, *c.* 78; 1818, *c.* 105.   Gen. Sts. *c.* 11, § 5, *cl.* 12; *c.* 14, § 48 ; *c.* 36, §§ 5, 6 ; *c.* 141, §§ 15–19.   *Andover* v. *Canton*, 13 Mass. 547.   *Thaxter* v. *Grinnell*, 2 Met. 13.   *Mayhew* v. *Gay Head*, 13 Allen, 129.   *Jaha* v. *Belleg*, 105 Mass. 208.   *Clark* v. *Williams*, 19 Pick. 499.   *Johnson* v. *McIntosh*, 8 Wheat. 543. *Jackson* v. *Goodell*, 20 Johns. 188, 693.   *Strong* v. *Waterman*, 11 Paige, 607.

By recent legislation, the Indians of the Commonwealth have been fully enfranchised from the subjection in which they 'had heretofore been kept, and put upon the same footing as other citizens, and provision made for the division of their lands among them in severalty as their absolute property.   Sts. 1869, *c.* 463 ; 1870, *cc.* 213, 293, 350.

By the St. of 1869, *c.* 463, § 1, " all Indians, and people of color, heretofore known and called Indians, within this Commonwealth, are hereby made and declared to be citizens of the Commonwealth, and entitled to all the rights, privileges and immunities, and subject to the duties and liabilities, to which citizens of

this Commonwealth are entitled or subject." By § 2, " all lands heretofore known as Indian lands, and rightfully held by any Indian in severalty, and all such lands which have been or may be set off to any Indian, shall be and become the property of such person and his heirs in fee simple ; " " and all Indians shall hereafter have the same rights as other citizens to take, hold, convey and transmit real estate."

Section 3 of the same act (under which the present case arises) confers jurisdiction upon the judge of probate of this county to make partition of the lands held in common belonging to the Herring Pond tribe of Indians, but lays down no rule for ascertaining who should be deemed proprietors of these lands and entitled as such to share in the division. In seeking for such a rule, our attention has been directed to the earlier statutes upon the same subject, the material provisions of which it may be convenient to state.

The St. of 1789, *c.* 52, concerning the plantation of Marshpee in the county of Barnstable, after reciting that many of the Indian, mulatto and negro inhabitants, occupying lands within the plantation, had no other title to the same but what they derived from grants or assignments made to them by the original proprietors ; and that it was necessary clearly to ascertain who are the proprietors of said plantation ; enacted, in § 3, that the overseers or guardians of the plantation should " make out a fair record of all the names of the proprietors of said plantation who usually reside within the same ; and in all cases where the title of proprietorship shall appear doubtful, the guardian or guardians shall examine into the same, and if they find the claim of such Indian mulatto or negro, either by descent, marriage or otherwise, well founded (the overseers confirming the same) his name shall be entered on said record, and such Indian, mulatto or negro shall be considered as a proprietor of said plantation to all intents and purposes ; " and in § 4, that " those who are not proprietors in their own rights or in the right of their wives, or who shall not be admitted as proprietors by the overseers, guardian or guardians in manner aforesaid, shall not be deemed or reputed inhabitants of said plantation."

By the St. of 1807, *c.* 109, the overseers of the Marshpee tribe were made also overseers of the Herring Pond tribe of Indians. And by the St. of 1818, *c.* 105, § 1, it was enacted that " to constitute a proprietor of the plantation or district of Marshpee, or a member of said Herring Pond tribe, the person alleged to be a proprietor must be a child or lineal descendant of some person who is now a proprietor ; and in no other way or manner shall the rights of proprietorship be acquired; " and the overseers were directed to " cause to be made an enumeration or census of all the proprietors and members of the said tribes, and of all other persons resident on their plantations respectively, distinguishing proprietors from all other persons ; and make a record thereof, of the names and ages of all such proprietors and members, which record shall distinguish the said tribes " and be revised and corrected annually.

The earliest statutes which provided for allotments in fee, out of the common lands in Marshpee, to the Indian proprietors, included none but " the legal adult proprietors of Marshpee, male and female," and " any minors who may be the descendants or children of a deceased proprietor or proprietors," counting among such lineal descendants " every person of Indian descent, who was born in said Marshpee, or within the counties of Barnstable or Plymouth, and who had resided, or whose parents or ancestors had resided, in Marshpee for twenty years or upwards " previously to the passage of the first of those statutes ; required the commissioners to give public notice and hold meetings in such manner as should " enable the inhabitants of said district, claiming to be proprietors, or the descendants or children of deceased proprietors, to present their claims to be recorded and to be fully heard thereon ; " and declared that " no person shall ever become a proprietor of said district, by operation of law, unless he be a lineal descendant of a proprietor ; and upon the death of any proprietor without such descendant, all his interest in the lands of the district shall escheat to the proprietary ; provided, however, that any proprietor of lands in severalty may devise or otherwise convey the same to any other proprietor." Sts. 1834, *c.* 166, and especially §§ 4, 9 ; 1842, *c.* 72, and especially § 3 ; 1844, *c.* 130.

The St. of 1850, *c.* 168, provided for a division of a part of the lands belonging to the Herring Pond Indians, by three commissioners, among the legal adult proprietors of Herring Pond Plantation, male and female, of the age of eighteen years or upwards on December 31, 1850, as ascertained and recorded by the commissioners after public notice and meetings, including the following persons : 1st. Those whose proprietorship should be established by evidence in the judgment and decision of a majority of the commissioners, " according to the customs, usages, descent, inhabitancy, or general acquiescence in such proprietorship, heretofore recognized and practised upon in said plantation, among the said Indians and their descendants." 2d. " All other persons of the age of eighteen years or upwards at the time aforesaid," " who are of Indian descent, born in the counties of Plymouth or Barnstable, and who shall have married a proprietor of said Herring Pond Plantation, and were inhabitants of and permanent residents in said plantation " on January 1, 1850. 3d. Any person whose case, though not distinctly provided for in this act, yet should in the unanimous opinion of the commissioners " so come within the spirit and meaning of this act as to constitute a manifest, equitable and just claim to proprietorship," and be assented to by vote of a majority of the adult proprietors at a meeting called for the purpose. 4th. One Indian woman, by name, the wife of a Marshpee Indian, herself " having been a proprietor of and domiciled in said Herring Pond Plantation before her marriage, and not having nor being entitled to any land in Marshpee." And it was declared that no person should be considered a proprietor of the Herring Pond Plantation, who should have received, or be entitled to receive, any lands or apportionment of lands in Marshpee under the acts relating to that district. St. 1850, *c.* 168, § 3. By § 6, all the remaining lands in the Herring Pond Plantation, not divided and allotted by force of this act, were to remain the common land of the plantation. And § 7 reserved to the legislature the right to alter, amend or repeal the act at its pleasure, except so far as rights of property in severalty might have been acquired under its provisions.

Danzell *v.* Webquish.

The whole effect of these statutes may be summed up thus: The only persons recognized as proprietors by the Sts. of 1789 and 1818 are persons residing within the plantation. The Sts. of 1834 and 1842 add only descendants of deceased proprietors. The St. of 1850 further includes those proved to be proprietors according to custom, usage, or general acquiescence, as recognized and practised upon in the plantation among the Indians and their descendants, or who, though not distinctly provided for, have a manifest, equitable and just claim to proprietorship, within the spirit and meaning of the act. The legislature expressly reserved the power of repealing this statute, except as to rights in severalty acquired under its provisions, the lands now in question are not affected by it, and all the appellants were born since its passage.

No evidence of custom, usage or general acquiescence has been introduced; and no countenance is given by any of the statutes to the proposition, ( upon which the claims of the appellants are based,) that children, who were not born and never resided upon the Indian lands, whose father is not shown to have been a member of the tribe or to have ever resided there, and whose mother, although a proprietor of the lands and born thereon, is still living, and resides with her husband and children elsewhere, are to be deemed themselves proprietors of the lands or entitled to share in the division thereof under the St. of 1869, *c.* 463, § 3.

*Decree affirmed.*