LAURA S. MERRIAM *vs.* BOSTON, CLINTON & FITCHBURG RAILROAD COMPANY & another.

Worcester. Oct. 2, 1874. — March 25, 1875. COLT & MORTON, JJ., absent.

A conveyance by a married woman, made prior to the St. of 1874, c. 184, of shares in a corporation owned by her, without complying with the provisions of the Gen. Sts. c. 108, § 3, is invalid, and does not estop her in equity to set up her title against a purchaser without notice from the transferee.

Prior to the St. of 1874, c. 184, a married woman made a conveyance of shares in a corporation owned by her, which was invalid by reason of her failure to comply with the requirements of the Gen. Sts. c. 108, § 3, through ignorance of their pro-visions. The shares were transferred to various purchasers without notice, the last of whom acquired title before the woman was informed that the conveyance was not binding upon her. *Held*, that she had not been guilty of such laches as would defeat a bill in equity brought by her eighteen months after she was in-formed of her legal rights to set aside the conveyance and to obtain a transfer of the shares to her.

BILL IN EQUITY, filed July 5, 1873, against the Boston, Clin-ton and Fitchburg Railroad Company and George A. Torrey, to compel them to account for certain shares of the stock and bonds of the corporation and to transfer the same to the plaintiff. The case was reserved by *Gray*, C. J., for the consideration of the full court, upon a report in substance as follows :

In October, 1867, the plaintiff was the owner of eight shares of the preferred stock and three shares of the unpreferred stock of the Fitchburg and Worcester Railroad Company, the same being her sole and separate property, and desiring to assist her son, Rufus D. Wilder, and to enable him to raise money, wrote her name upon the back of her certificates of the shares, and

VOL. III.                 16

handed him the certificates so indorsed, to be used by him foɪ that purpose, and the stock was so used with her knowledge. On November 6, 1867, transfers of the stock to E. M. Simmonds were written, by Rufus, upon the back of said certificates, above the plaintiff's signature, in the usual form, and were taken to the office of the company and duly recorded, and new certificates for the same number of shares were issued to Simmonds, upon the surrender of the old certificates.

On April 10, 1868, Simmonds transferred the shares to John W. Carpenter. On April 28, 1868, Carpenter transferred them to Martha F. Marshall; and on March 2, 1869, Marshall transferred the shares to the defendant Torrey. Simmonds, Carpenter, Marshall and Torrey each received their respective transfers in good faith, and each paid a valuable and adequate consideration therefor, and neither of them had any knowledge of any defect in. the title thereof, and in each case the transfers were in due form, were duly recorded on the books of the company, and new certificates were issued upon the surrender of the old certificates.

On June 18, 1869, the Fitchburg and Worcester Railroad Company, and the Boston, Clinton and Fitchburg Railroad Company, under authority conferred by the legislature, mutually executed and entered into by their proper officers, duly authorized, a written contract for the consolidation of the two companies, and thereupon the said companies were consolidated, as provided in the contract, and became the present Boston, Clinton and Fitchburg Railroad Company.

Shortly after the consolidation of the two companies, and in pursuance of the contract, the new corporation issued to the defendant Torrey, as the holder of said eleven shares, certificates of eleven shares of the stock of the new company, and bonds of the new company to the amount of $800, and the said Torrey has since been the holder of the certificates and has received interest on the bonds ; but no dividends have ever been made upon the stock. During all the above transactions, the plaintiff was and has ever since been a married woman, living with her husband, Charles H. Merriam, in Leominster in said county, who never assented iɲ writing, or otherwise, to her conveyance of the first named shares, or joined with her in the conveyanᴄe thereof, nor was the consent

of any judge of the Supreme Judicial Court, Superior Court, or Probate Court ever obtained or granted to her to make such conveyance.

At the time the plaintiff signed her name on the back of the certificates, as above stated, she did not know that the consent of her husband, or of a judge of one of said courts, was necessary to authorize her to make a conveyance of said shares, and she was first informed that such consent was necessary in January, 1872, by H. F. Coggshall, who, during the above transactions, until January, 1871, was the clerk and treasurer of the present corporation, who then requested her either to buy the stock back, or to obtain her husband's consent to the original transfers. Her husband, at this time, refused to give his consent.

The certificates were indorsed by the plaintiff and given to the son without the husband's knowledge. The son received the consideration from Simmonds, and he has never repaid the same to the plaintiff. The plaintiff made demand on the defendants a short time before filing this bill.

The stock was transferred by the company in good faith, the treasurer being ignorant of the laws applicable to the transfer of stock by married women, and no other officer of the company being aware of the transaction. The plaintiff has made no attempt to act as stockholder in the company since the transfer to Simmonds, nor ever informed the company, or Torrey, that she considered the transfer invalid, or that she desired to recall the same, until December, 1872. She has resided at a distance of five miles from the office of the company where stockholders' meetings have been held. The defendant corporation owns no bonds, the whole amount authorized by the contract having been issued, and Torrey, before any notice of the plaintiff's claim, sold and disposed of all of the bonds except one bond for the sum of $100. The value of the stock and bonds is now considerably greater than the value of the stock at the time of the transfer to Simmonds.

The case is reserved, at the request of the parties, for the consideration and determination of the full court, who are to render such a decree as justice and equity may require.

*T. L. Nelson*, for the plaintiff.

*G. A. Torrey*, for the defendants.

AMES, J. . At the time when the plaintiff delivered the certifi·
cates of her shares, with her signature indorsed, to her son, she
had no legal capacity to convey them, without the written consent
of her husband, or that of a judge of the Supreme Judicial Court,
Superior Court, or Court of Probate. Gen. Sts. *c.* 108, § 3. As
the conveyance under which the defendants claim was without
such consent, it was invalid, and the legal title to the shares still
remains in her. The doctrine of estoppel is not applied to the
case of a party incapable in law of making a contract, and she is
therefore not estopped to deny the validity of the conveyance.
*Lowell* v. *Daniels*, 2 Gray, 161. *Pierce* v. *Chase*, 108 Mass. 254.

The defendants insist that the claim of the plaintiff is inequi-
table, and that for that reason she is not entitled to the aid of
a court of equity in its enforcement. But there is no equitable
construction of a contract or duty, different from the legal one,
and the same thing is true in the construction of statutes.
2 Story Eq. Jur. § 1548. A court of equity has no more juris-
diction than a court of law to recognize and give effect to instru-
ments which, by statute, are inoperative. *Townsley* v. *Chapin*,
12 Allen, 476. The provision of the General Statutes above
cited was undoubtedly intended for the protection of the rights
of married women, and was for many years a part of the settled
policy of the law. We are not prepared to hold that the asser-
tion by the plaintiff of a clear legal right is in itself inequitable,
in such a sense that her remedy in equity ought to be denied.
If the pursuit of such a remedy were a violation of the defend-
ants' rights, or a breach of any agreement accompanying or modi-
fying the original contract, or giving to the defendants any special
equity peculiar . to themselves, or placing them in any different
position from that of any other person who has had the misfor-
tune to take a defective title, the case might stand differently.

With regard to the alleged laches on the part of the plaintiff,
it is found in the report that she was not informed until some
time in January, 1872, that the conveyance of the shares was not
binding upon her. Whatever title any of the defendants sup-
posed they had acquired in the property was obtained before that
date, and it does not appear that since then any new expenses
have been incurred or any new liabilities created. It is true that
the disability of a married woman to bring an action has been

removed, yet practically the fact of coverture cannot be wholly overlooked in the consideration of the question of laches. We are not prepared to say that there has been such a long continued and unexplained acquiescence on her part in the defendants' possession of the property as to amount to gross laches, sufficient to deprive her of her remedy.

For these reasons we think she is entitled to the relief prayed for, and to a                        *Decree accordingly.**

* By the St. of 1874, *c.* 184, "A married woman may convey her shares in corporations," "in the same manner as if she were sole."