SILAS A. PELLS & another *vs.* SOLOMON F. WEBQUISH.

Barnstable.   Jan. 30. — Sept. 11, 1880.   MORTON & SOULE, JJ., absent.

The deed of an Indian proprietor of land in the district of Marshpee, made after the passage of the St. of 1834, *c.* 166, to a person not a proprietor, is void, and is not made valid by the admission of the grantee to proprietorship by the St. of 1842, *c.* 72, nor by the removal of all disabilities from Indians by the St. of 1869, *c.* 463; and the heirs of the grantor are not estopped, in a writ of entry, to set up title in the land against such deed.

An authenticated copy of a return, purporting to be an enumeration by the overseers of the proprietors of Marshpee, made nearly fifty years ago, under the St. of 1818, *c.* 105, which is taken from the files of the Governor and Council, is admissible in evidence in a writ of entry, to prove that a person, under whom the tenant claims, and whose name does not appear on the return, was not a proprietor at the time the return was made, although the return is signed by one only of the three overseers.

WRIT OF ENTRY to recover a parcel of land in Mashpee. Plea, *nul disseisin.*

At the trial in the Superior Court, before *Brigham,* C. J., both parties claimed title to the demanded premises under one Mercy McGrego, who was a proprietor of Marshpee.

The demandant Pells claimed by descent from her, and the other demandant claimed by deed from her other descendants to one Chaplin, dated December 24, 1873, and by deed from Chaplin to him, dated September 27, 1877.   Both deeds were duly delivered on the premises, and recorded before the bringing of this action.

The tenant claimed under a deed made on July 23, 1834, by Mercy McGrego to his father, Jesse Webquish, and by sundry mesne conveyances from the administrator of the latter under license from the Probate Court, all which had been duly recorded.

By the St. of 1834, *c.* 166, which was in force when the deed to Jesse was made, no proprietor of Marshpee could convey land to any person other than a proprietor of Marshpee (now the town of Mashpee), and no person not a proprietor could hold land there; and the demandants contended that, when the deed to Jesse was made, he was not a proprietor, and that McGrego was therefore incapable of conveying to him, and he was incapable

of holding land in Marshpee. Upon an issue framed, the jury found that he was not then a proprietor.

By the St. of 1842, *c.* 72, persons having certain qualifications could be admitted as proprietors. It appeared that Jesse Webquish was so admitted in 1842; and that he afterwards exercised the rights of a proprietor, but that he had never exercised those rights or claimed the right to do so prior to his admission, although he was of Indian descent, born either in the county of Barnstable or Plymouth, and had then lived in Marshpee upwards of twenty years.

Jesse Webquish had possession of the demanded premises after the date of the deed to him, but the land always was and now is wild and uncultivated land; and the tenant did not claim title by prescription. There was no evidence that any heirs of Mercy McGrego had ever been in possession of the premises since her deed to Webquish, until the entry was made to deliver the deeds to and from Chaplin.

The tenant contended that, if the deed of Mercy McGrego to Webquish did not operate to convey the title to him at the date thereof, it did so operate when he was admitted to proprietorship in 1842, or when disabilities were removed by the St. of 1869, *c.* 463, and that the heirs of Mercy McGrego were estopped from setting up title against the same; and asked the judge so to rule. But the judge declined so to rule; and the tenant excepted.

By the St. of 1818, *c.* 105, § 1, a record was to be made by the overseers of the proprietors of Marshpee, and a return thereof made, annually, to the Governor and Council; and the demandants offered in evidence a duly authenticated copy from the files of the Governor and Council, purporting to be an enumeration of the proprietors of the plantation of Marshpee, taken in November 1832 by the overseers, and signed by one overseer, in which the name of Jesse Webquish did not appear. The tenant objected to the admission of this paper, on the ground that it did not appear to be the act of the overseers, but of only one of them, there being three, and because the absence of the name of Jesse Webquish therefrom was not competent evidence to show that he was not then a proprietor. The judge admitted it; and the tenant excepted.

After the finding of the jury that Jesse Webquish was not a proprietor, as above stated, the judge directed a verdict for the demandants; and the tenant alleged exceptions.

*G. Marston,* for the tenant.

*T. H. Tyndale,* for the demandants.

ENDICOTT, J.   Before the passage of the St. of 1869, *c.* 463, which declared all Indians within the Commonwealth to be citizens, they were treated as wards of the Commonwealth, and the title to lands occupied by them was in the Commonwealth, and their use and improvement were regulated from time to time by the Legislature.   *Danzell* v. *Webquish,* 108 Mass. 133.   *Coombs, petitioner,* 127 Mass. 278.   See also St. 1870, *c.* 293.

The St. of 1818, *c.* 105, in relation to the Indians and other persons, proprietors and residents on the plantations of Marshpee and Herring Pond, defined what persons should be considered proprietors; and also enacted that the real estate held by them, as such proprietors, might be disposed of by deed or will.   §§ 1, 5.   By the St. of 1834, *c.* 166, § 9, establishing the district of Marshpee, it was provided that, upon the death of any proprietor without descendants, all his interest in the lands of the district should escheat to the proprietary, and that any proprietor of land in severalty might devise or sell the same to any other proprietor.   The power of a proprietor, in conveying land held in severalty, was thus limited, and he had no authority to convey to a person who was not a proprietor.   And by § 12 the land of such proprietor was exempt from being taken on execution, and if arrested he might have the benefit of the oath of a poor debtor, notwithstanding any interest he might have in such land.   It is obvious that it was the intent of the Legislature, by the enactment of this and similar statutes, to protect the Indians from the dangers arising from their improvidence and incapacity.   See *Thaxter* v. *Grinnell,* 2 Met. 13; *Mayhew* v. *Gay Head,* 13 Allen, 129.

The deed, therefore, of Mercy McGrego to Jesse Webquish, who was not a proprietor, made after the passage of the St. of 1834, was in contravention of law and void.   She was incapable of making such a contract, and its execution could not affect her interest in the estate, or the interest of her descendants, who, by virtue of their descent from her, became proprietors, as provided

in the St. of 1818, *c.* 105, § 1.   Nor did the deed take effect and operate as a conveyance, when Jesse Webquish was admitted as a proprietor in 1842, under the St. of 1842, *c.* 72, which provided that persons having certain qualifications could be admitted as proprietors.   The deed being absolutely void, and the title remaining in Mercy McGrego, neither she nor her descendants were estopped from setting up title in the land, as against Jesse Webquish, although he afterwards became a proprietor; for the doctrine of estoppel has no application to the case of a party incapable by law of making a contract.   For the same reason, the St. of 1869, *c.* 463, removing all disabilities from Indians, cannot affect this conveyance.   *Lowell* v. *Daniels,* 2 Gray, 161.   *McGregor* v. *Wait,* 10 Gray, 72.   *Merriam* v. *Boston, Clinton & Fitchburg Railroad,* 117 Mass. 241.   *Pierce* v. *Chace,* 108 Mass. 254.

It was in evidence at the trial that Jesse Webquish after his admission exercised the rights of a proprietor, but before that time he had never exercised or claimed to exercise such rights.

The St. of 1818, *c.* 105, § 1, also provided that the overseers of Marshpee, who were three in number, should make an enumeration or census of the proprietors of Marshpee and all other persons resident therein, distinguishing proprietors from other persons, and make a record of the same, which should be revised and corrected at their annual meeting; and further, that " a return thereof shall be made by the said overseers to the Governor and Council on or before the last day of December annually."

The demandants, for the purpose of showing that Jesse Web quish was not a proprietor in 1832, offered in evidence an au thenticated copy, from the files of the Governor and Council, of a return, purporting to be an enumeration of the proprietors of the plantation of Marshpee, taken in November 1832 by the overseers, and signed by one overseer.

The tenant objected to its admission, " on the ground that it did not appear to be the act of the overseers, but of only one of them, there being three, and because the absence of the name of Jesse Webquish therefrom was not competent evidence to show that he was not then a proprietor."   There can be no

question that it was competent to show by a proper return of the overseers that he was not then a proprietor. The overseers were public officers, charged with the duty of determining who were the proprietors in 1832, and of entering the names in their records; and a return of the same to the Governor and Council was required to be made, in order that the Governor and Council could ascertain and have upon their files the names of those who appeared on the records of the overseers to be proprietors. A return thus made is a public record, and is conclusive upon the question who were at that time the proprietors, and the omission of the name of Jesse Webquish shows that he was not then a proprietor. *Gurney* v. *Howe*, 9 Gray, 404. *Richardson* v. *Mellish*, 2 Bing. 229. *Regina* v. *Pembridge*, Car. & M. 157. 1 Greenl. Ev. §§ 483, 484.

Nor do we consider the return incompetent because signed by one overseer. The return is a ministerial act, intended merely to disclose who are the proprietors, as shown by the recorded enumeration of the overseers. The form in which it shall be made is not prescribed by the statute, and there is no express provision that it must be signed by any or all of the overseers. The requirement simply is that the overseers shall make a return. They could undoubtedly do so by authorizing one to sign for them, or they could return a copy of their record. And if such copy was not duly authenticated, yet if found on the files of the Governor and Council, and nothing appeared to impeach its verity, it would be competent evidence, as a record found in the proper custody, after a lapse of nearly fifty years, when its verification would be difficult, if not impossible. *Rust* v. *Boston Mill Corporation*, 6 Pick. 158. *Edson* v. *Munsell*, 10 Allen, 557. *Commonwealth* v. *Parker*, 2 Pick. 549, 562. This return purports to come from the overseers, and from the fact that it was duly filed we must presume that it was made as the return of the overseers, and was accepted by the Governor and Council as the return required of them by law. See *Rex* v. *Catesby*, 2 B. & C. 814.     *Exceptions overruled.*