Sheldon, Ch. J.
It appeared in this case that the defendant Gruenther succeeded, as legatee, to the ownership of the established business of Henry T. Gfilleit & Son in Buffalo, and in May, 1876, made and published a certificate under the statute that she had become the sole owner of that business, and would continue it at the same place, under the management of her husband as her agent, and under the same firm name of Henry T. Grillett & Son. This was the only trade or business she carried on from 1876 until after the note in suit was discounted by the plaintiff in January, 1883, and she was allowed by the statute law to carry it on, as to every particular, as if she was an unmarried woman, and actually did, by her agent, transact continuously a very large and important business. The note in question was made and issued to another mercantile firm and came into the plaintiff’s hands before maturity in the ordinary course of business, for value and in good faith, and upon its dishonor this action was instituted. The defendant claims, that the note was made for the accommodation of the payees thereof, and was not created by her in or about carrying on her trade or business, and was not made for the benefit of her separate estate, and consequently that it is a void contract, upon which the plaintiff cannot recover.
Now, in this case, and upon the testimony, it seems very clear that the note in suit was not an accommodation nóte, for the reason that when one of the original notes, of which the note in suit was a renewal, was discounted, the proceeds of the discount were handed to .the agent of the defendant, and he paid them into the defendant’s bank account, being the bank account of Henry T. Grillett & Son, and that she got the benefit of the proceeds by using them to take up regular business notes previously given, and in other ways. The transaction was not an isolated one, but one of hundreds, arising out of a faulty practice that had been continued *430 from the very inception of the business for ■ several years, to the time of the defendants failure, and the history of the transactions was involved and indefinite. But the important fact is proved by the agent, that the proceeds of the notes were always brought to him and' paid by him into the defendant’s general bank account in the Manufacturers’ and Traders’ Bank, to pay the notes becoming due there. He did not know what the payees did with the notes, but he found that they eventually came through the defendant’s bank where they were payable and he gave checks to pay them, or they were charged in account to the defendant.
It appears to be but a just conclusion from all the testimony, that not only the note in suit but the various other notes issued and negotiated in the same manner with the banking institutions of the city, were not accommodation notes as the term is used, in the law, to define the character of paper.
If it was not clear, beyond dispute, that it was an accommodation note, that question should have been left to the jury, upon the third proposition made by the plaintiff for leave to go to the jury. If the jury found that it was not such a note, it would be an end of the case', but if the verdict was otherwise, the ulti-. mate decision might be governed and determined upon other rules and principles, which are to be briefly considered in this action.
But, it is also apparent that this contract should not only not be treated'as an accommodation, note, but • that it was intentionally made in and about her trade and business, and related to and was for the benefit of the defendant’s separate estate. The proofs show that a very large number of notes of like description, made by Henry T. Grillett & Son, issued to the Farthings, were outstanding at the date of this note. How. many were issued for the property purchased by her, or how many in continuance of the arrangements for credit. *431 with the Farthings, is uncertain and immaterial. The defendant’s credit and business standing were at stake, and could be sustained only by promptly meeting the notes as they matured, and for that purpose and in order to benefit her separate estate, by maintaining that credit, the defendant issued this note upon which money was to be and was raised through the Farthings at their bank and delivered to the defendant to be deposited in her own business bank account to meet maturing notes. She had the same right as an unmarried woman to resort to this mode of obtaining credit and money. In 42 N. Y. 626, Hunt, Commissioner, said: “ When a married woman assumes to act with reference to her separate estate, the question is not whether her action is really for her own benefit. The right to act and bind her own estate, carries with it the right to act unwisely, if she so wills.”
The plaintiff further insists, that, even if the note in suit was an accommodation note, and not an obligation created by her in or about carrying on her trade or business, or made for the benefit of her separate estate, yet that upon its face it purports to be made in her separate business, and was offered and sold to the plaintiff under such circumstances as to warrant the assumption and inference on the part of the plaintiff, that it was defendant’s genuine business paper, given for value, and that the defendant is estopped, as to a tona fide holder who relied upon those facts and her credit, from showing the note toe have been otherwise than perfectly legitimate. This question is really the important one in the case, and upon the facts, should receive the consideration of the court of last resort.
Before the innovations upon the common law, through the various legislative acts concerning their property and capacity to transact business, married women could make no valid contracts in relation to their estate, and the doctrine of estoppel in pais, had *432 no application to them or to infants. The law had rendered her incapable of such contract, and she found in her incapacity her protection ; her safety in her weakness (2 Gray, 161, 168). Her contracts were altogether void, but she was unquestionably responsible for all torts or wrongs committed by her during coverture, and her husband was joined and liable as a defendant in all actions against her. She was liable, therefore, for frauds committed by her on any person, as for any other personal wrongs, unless the fraud' was directly connected with the contract with the wife and was the means of effecting it, and a parcel of the same transaction. The object of the common law was to protect her, absolutely, against contracts made by her during coverture, but not to shield her from the consequences of her wrongful acts. The various statutes of our State, passed in pursuance of an enlightened policy, have changed the status and position of a married woman in the law, and provided for her holding property, carrying on any trade or business on her sole and separate account, and suing and being sued as if she were unmarried. These statutes placed the married woman in an anomalous position. She became, in certain cases, neither a married nor a single . woman as known to the common law, but was lowered from the dignity and ■ wo manliness of the one position, without being entirely invested with the independence and standing of the other. In the construction and exposition of the statutes try the court, it has resulted that the law is now well defined and settled that a married woman can not bind herself by contract; “ unless, first the obligation was created by her in or about carrying on her trade or business-; or, second; the contract relates to or is made for the benefit of her separate estate; or, third', intention to charge the separate estate is expressed in the instrument or contract:by which the liability is created ; or, fourth, the debt was *433 created for property purchased by her” (Saratoga County Bank v. Pruyn, 90 N. Y. 250). All her other obligations are void (Hudson v. Hudson, 1 Sheldon, 386 Bogert v. Gulick, 65 Barb. 322; Downing v. O’Brian, 67 Barb. 582 ; Baker v. Lamb, 11 Hun, 519).
If the note was a void contract, as claimed by the defendant, it is argued by the plaintiff that the defendant, actually carrying on a separate business, is bound by the same rules of law and equity in the conduct of it that are applicable to men and unmarried women. And why not ? It cannot be that the legislature has invested the married woman with certain rights and privileges in derogation of the common law, without it being intended, in the law, that she shall be held, in the exercise of those rights and privileges, to the same responsibilities and liabilities that govern the man or the unmarried woman. Were it not so, then the citizens and members of the community are not equal in their standing in the law. A married woman carrying on a separate business or trade is but a member of the social organization or body politic, entitled to every right that men have, but not to any exemption from the effect of those principles of law and equity which have been established by the courts for the protection of property and the well-being of society. She need not carry on a separate business or trade, she need not accept the position and privileges given her by statute, but if she does, and goes out into the arena of active life, seeking for its advantages and power, she should be governed by and .held to the same rules of action, the same liabilities, and bound by the same doctrines of established law and equity as are those with whom she mingles in the business transactions of life. She can be only their peer and not their superior ; she cannot justly be clothed in an armor of exemption and special privileges because of her weakness at the common law, and at the same time assert her right to all *434 the privileges of manhood in her business transactions: If she accepts the privileges of the statutes and the position the law gives her, she accepts them cum onere, bearing the same burdens and subject to the same liabilities and rules of law and equity as her unmarried sister.
The true solution of the question is to be found in the declared position and rights given to her b'jr statute; she may hold property and carry on any trade or business on her sole and Separate account, and sue and be sued as if she were unmarried. In carrying oh her business, she is to be considered as an unmarried woman, and, of course, an unmarried woman can claim no exemption, but stands on an entire equality with men. Before the passage of the act referred to, the courts all agreed that the doctrine, of estoppel in fact and equitable estoppel had no application to married women or infants, unless their conduct had been intentional and fraudulent. But when the reason of the rule is done away with, and the married woman is placed by law on the' same plane of equality with the man or unmarried woman, then the rule becomes abrogated, or at least not applicable to her transactions in carrying on her separate business.
In this case, without making án extended review of the testimony, it appears that the note was made, not in the defendant’s name, but in the name she had declared to the world was the name in which she would carry on her separate business, viz.: Henry T. Gillett & Son. Upon its fade, it represented that it related to her business and that it was made in that business. It was made payable at the Manufacturers’ & Traders? Bank, where she had uniformly kept her account in her business, and was payable to a firm of whom she had always largely purchased and to whom she had given her notes for property for years. To her knowledge all her notes, whether given for property, of in *435 the various arrangements for aid and credit which she had with the Farthings, were discounted by the other banks in the city, and were presented at her bank upon maturity, and were recognized and paid by her. The plaintiff had bought many such notes for value, which have been paid through the defendant’s bank, and received the one in suit in perfect good faith. It had a right to rely upon the facts ; upon all that was connected with the antecedent transactions ratified by defendant in purchasing or discounting the note, and was encouraged by those legitimate business transactions so to do, and the defendant should in good morals and equity, be estopped, by her conduct, from denying her liability.*
In this view of the case, it is of no consequence whether it was an accommodation note or not.
' The trial judge erred in granting the non-suit and a new trial should be granted, costs to abide the event.
Smith and Beckwith, JJ., concurred.

 It has been frequently decided that the doctrine of estoppel in pais has no application to married women. De Lancy v. McKeen, 1 Wash. C. Ct. 354 ; Bank of United States v. Lee, 13 Pet. 107 ; Drury v. Foster, 2 Wall. 24 ; Glidden v. Strupples, 52 Penn. St. 400; Lowell v. Daniels, 2 Gray, 161, 168; Bemis v. Call, 10 Allen, 512; Merriam v. Boston R. R. Co., 117 Mass. 241, 244; Baugeley v. Spring, 21 Maine, 130; Morrison v. Wilson, 13 Cal. 494. In Concord Bank v. Bellis, 10 Cush. 276, the court held that a married woman could not do by acts in pais what she could not do by deed. To say that one might by acts in the country, by admission, by concealment, or by silence, in effect do what could not be done by deed, would be practically to dispense with all the limitations the law has imposed upon the capacity Of married women. Yet married women might be estopped if their conduct was fraudulent. McCoon v. Smith, 3 Hill, 147; Bigelow on Estoppel, 443, 446; Carpenter v. Carpenter, 10 C. E. Green, 194; Schwartz v. Saunders, 46 Ill. 18; Connolly v. Braustler, 3 Bush, 702; Wright v. Arnold, 14 B. Mon. 638; Davis v. Tingle, 8 Id. 539; Jones v. Kearney, 1 Dru. & War. 134; Vaughan v. Vanderstegen, 2 Drew, 363; Wright v. Leanord, 8 Jur. N. S. 415, In re Lush, L. R., 4 Ch. App. 591.
*436 , The case reported above, Third Nat’l Bank of Buffalo v. Guenther,; differs in principle from those cases where it was held that an action at law could not be maintained on a contract made with a feme covert who falsely represented-herself to be sole. Liverpool Association v. Fairhurst, 9 Ex. 422; Cannam v. Farmer, 3 Ex. 698; Wright v. Leanord, 11 C. B. N. S. 258 ; Keen v. Coleman, 39 Penn. St. 299; Keen v. Hartman, 48 Id. 497.
The essential point of difference would seem to be that, the case turns upon that part of the Married Women’s Act which enables her to carry on a separate business, and as incidental to that power she has the power to bind herself by the ordinary course and usages of trade.