GEORGE P. DREW *vs.* ELIZABETH C. CARROLL & another.

Barnstable. March 24, 1891. — June 26, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Indian — Estate in Common — Partition — Mortgage.*

A deed which conveys all the creditor's real estate in certain towns, " consisting of homestead and dwelling-house I reside in, and outbuildings and woodland and cleared land, of whatsoever name or nature, and however bounded or situated," includes his rights as a tenant in common of undivided lands situated therein.

Under the St. of 1869, c. 463, the members of the tribe of Herring Pond Indians acquired both legal and equitable rights as tenants in common of the undivided lands of the tribe, which they could convey by deed.

If a member of an Indian tribe mortgages the undivided interest acquired by him in its undivided lands, under the St. of 1869, c. 463, and subsequently partition is duly had of such lands, the mortgage lien will attach to the portion passing to the mortgagor.

TORT, against Elizabeth C. Carroll and Shadrach F. Swift, for breaking and entering the plaintiff's close. Trial in the Superior Court, before *Mason,* J., who reported the case for the determination of this court, in substance as follows.

The premises in question were situated in the town of Plymouth, and formed a part of the plantation belonging to the tribe of Herring Pond Indians, which was not allotted among them under the St. of 1850, c. 168, and under § 6 of that chapter remained the common lands of the tribe. Anthony T. Johnson, a member of the tribe, to whom land was allotted under that statute, and who had an interest in such common land, on Janu-

ary 20, 1870, executed a mortgage to one Briggs of "all the real estate I own in the town of Sandwich and county of Barnstable, and also all the real estate I own in Plymouth, county of Plymouth and State aforesaid, consisting of homestead and dwelling-house I reside in, and outbuildings and woodland and cleared land, of whatsoever name or nature, and however bounded or situated."

Under the St. of 1869, c. 463, upon due proceedings begun in the Probate Court in September, 1870, commissioners were appointed by that court to make partition of such common land, and, Johnson having meanwhile died, allotted the land, including the premises in question, which would have been his if he had lived, to " heirs of Anthony T. Johnson"; and their report was confirmed by the Probate Court. The plaintiff claimed title by mesne conveyance through one of the heirs of Johnson. The widow of Briggs, as his devisee, became the owner of the mortgage, and, after duly entering to foreclose the same for breach of condition, assigned to the first named defendant all her right, title, and interest acquired by such entry; and the plaintiff received notice of the assignment on September 14, 1889. The first named defendant thereupon took possession of the premises in question, claiming the rights of a mortgagee in possession of land under a mortgage for condition broken, and, together with Swift as her agent, entered upon the premises and took a portion of a cranberry crop growing thereon ; and this was the tort complained of by the plaintiff.

The judge upon these facts ordered judgment for the plaintiff in the sum of twenty dollars, which was agreed to be the damages sustained by the plaintiff. If, as matter of law, the ruling was erroneous, judgment was to be entered for the defendants ; otherwise, for the plaintiff.

*C. F. Chamberlayne,* for the plaintiff.

*S. M. Thomas,* for the defendants.

KNOWLTON, J. The fundamental question in this case is whether, under the St. of 1869, c. 463, the members of the tribe of Herring Pond Indians acquired rights in the lands held in common belonging to that tribe, which they could transfer by deed. On January 20, 1870, Anthony T. Johnson executed a mortgage of real estate to Seth Briggs, and the defendant Eliza-

beth C. Carroll now holds the title which was created by that mortgage. The property covered by the mortgage was described as follows: "All the real estate I own in the town of Sandwich and county of Barnstable, and also all the real estate I own in Plymouth, county of Plymouth and State aforesaid, consisting of homestead and dwelling-house I reside in, and outbuildings and woodland and cleared land, of whatsoever name or nature, and however bounded or situated." This description is in the most comprehensive terms, and we are of opinion that it is broad enough to include his rights, if he had any, as tenant in common of undivided lands.

In determining whether he had an interest which he could convey, we must consider the language and the purpose of the statute above referred to. Section 1 of the act made all Indians in the Commonwealth citizens of the Commonwealth, "entitled to all the rights, privileges and immunities, and subject to all the duties and liabilities to which citizens of this Commonwealth are entitled or subject." Section 2 declared that all Indian lands, "rightfully held by any Indian in severalty, and all such lands which have been or may be set off to any Indian, shall be and become the property of such person and his heirs in fee simple," with a proviso exempting them from attachment or seizure on execution for a debt or liability existing before the passage of the act. Having all the rights of a citizen, an Indian under this statute could sell or control in any way all his interests in property, whether legal or equitable, as freely as any one else. It remains to inquire whether the statute gave him any rights which were transferable in the common lands.

Previously, all the common lands had been held and controlled by the Commonwealth for the benefit of the Indians, who were treated as wards of the State. The State recognized only certain equitable rights of ownership in the Indians, and it kept their property, and exercised a guardianship over them to protect them from the consequences of their own improvidence. *Brown* v. *Wenham*, 10 Met. 495. *Mayhew* v. *Gay Head*, 13 Allen, 129. *Danzell* v. *Webquish*, 108 Mass. 133. *Lynn* v. *Nahant*, 113 Mass. 433, 449. *Coombs, petitioner*, 127 Mass. 278. *Pells* v. *Webquish*, 129 Mass. 469. The statute above referred to put them, for the most part, on the basis of ordinary citizenship. It

gave them all the rights of citizens, and confirmed their titles to their individual property. In regard to lands held in common, it made an exception of the Indians of Mashpee and Gay Head, and continued the State's ownership and control of their common lands for their benefit, until the passage of the St. of 1870, c. 293. *Coombs, petitioner,* 127 Mass. 278. As to all others, it gave every Indian a right immediately to have his share of the common lands of the tribe set out to him, or sold for his benefit. At the same time, it gave him a right to have his share in any funds, or other property held in trust for the tribe, paid over to him. A method was provided through which his title might be established. Commissioners were to be appointed by the Probate Court, who were to act under the direction of the court, and determine all necessary questions, and make their report, on which the court would make its order or decree. Any person deeming himself aggrieved might appeal to the Supreme Judicial Court. As soon as this statute took effect, every Indian belonging to the Herring Pond tribe had precisely the same kind of right in the lands of the tribe that an ordinary tenant in common has in the lands held by himself and his cotenants. He had a right, on application, to have his share set off to him, to be held in severalty, unless the commissioners should adjudge that it was for the interest of the owners to have it sold, and in that case he was entitled to his share of the proceeds. Under our general laws, any tenant in common is liable to be compelled to receive his share of the proceeds of the sale of the lands held in common, if the court deems a sale advantageous to the parties. Pub. Sts. c. 178, § 65. We can see no particular in which the right of an Indian in the common lands of the Herring Pond tribe, under the St. of 1869, c. 463, differed from the right of other tenants in common. The difference in procedure in determining his interest does not affect the nature of that interest. His right was vested and enforceable the moment that the statute took effect. That he had from that time an equitable right, of which he could not be deprived, can hardly be questioned. It seems to us better, and more consistent with the purpose of the statute, to hold that he had a legal right as well. His legal title was not created by the decree of the Probate Court, but it was created by the statute, and only declared by the decree of the court, on

the report of the commissioners, according to the facts. This seems to have been the view taken by the commissioners and by the Probate Court when, after his death, they set off his share to his heirs.

Since he had a title to an undivided interest when he made the mortgage to Briggs, his interest passed to Briggs under the mortgage, and when, by the proceedings for partition, the shares of all the others were set out in other parts of the land, and his was set out in the premises described in the declaration, the right of the mortgagee attached to these premises. By our general laws in regard to partition, it is expressly provided that a person having a mortgage, attachment, or other lien on the share of the part owner shall be concluded by the judgment, so far as it respects the partition and the assignment of the shares, but his lien shall remain in force upon the part assigned to or left for the part owner. Pub. Sts. c. 178, § 44. If there were no such statute, he would doubtless have a right to avail himself of his lien upon the part of the land which passed to the person from whom he takes title. *Bradley* v. *Fuller*, 23 Pick. 1. *Brown* v. *Bailey*, 1 Met. 254. *Torrey* v. *Cook*, 116 Mass. 163, 164.

In the present case, if that makes any difference, the mortgagee has ratified and confirmed the partition by entering upon the land and holding possession of it. We are of opinion that the defendant Carroll, who has the mortgage title, is lawfully in possession under her mortgage, and it follows that there must be,                              *Judgment for the defendant.*