THE STATE OF VERMONT *v*. THE VILLAGE OF BRADFORD AND OTHERS.

*Quo Warranto. Corporations. Costs.*

An act of the Legislature incorporating the village of Bradford provided that a meeting of the legal voters of such village should be held, and that if a majority of the legal voters present should vote in favor of accepting the charter, it should be in force, but otherwise void. The meeting was held, and the majority of the votes cast were in favor of accepting the charter, and officers were elected as provided thereby, and the village was organized as a corporation. Upon a motion by the State's Attorney for leave to file an information in the nature of a *quo warranto* against such corporation and its officers, setting forth that a portion of the vote at such meeting was fraudulent, and that in fact a majority of the legal voters present voted against the acceptance of the charter, and upon testimony showing the truth of the allegations in the information, the supreme court allowed the information to be filed, and ordered that the corporation be dissolved, and that the other defendants should no longer exercise any of the functions pertaining to the offices thereof.

But the officers of the corporation having filed a disclaimer of any purpose of exercising the functions of the offices to which they had been elected, no costs were allowed against them, on the ground that there was no distinct evidence of their participation in any illegal or improper proceedings in effecting the organization under the charter.

State *v.* Bradford et al.

Though proceedings of *quo warranto* against a corporation, and its officers, are brought in the name of the State, yet the name of the relator, if there be one, should be brought upon the record, and when the defendants prevail, they may be allowed costs against the relator. REDFIELD, CH. J.

This was a motion by the State's attorney for Orange County, for leave to file an information, praying for a writ of *quo warranto* against the defendants, the corporation of the village of Bradford, and sundry individuals who claimed to act as officers of such corporation.

The information alleged in substance that the Legislature of this State, in 1858, granted a charter to the citizens of the village of Bradford,* by which it was provided that a meeting of the legal voters of that village be held on the first Wednesday of January, 1859, to see if they would accept and approve such charter, and that if a majority of the legal voters present at such meeting should be in favor of such acceptance and approval, then the charter should be in force, but otherwise void ; that such a meeting was held at the appointed time, that only ninety-five legal voters were present and voted at the meeting, but that one hundred and twenty-two votes were actually cast, of which fifty-one were cast against the acceptance and approval of the charter, and seventy-one in favor thereof, and that the vote was so declared ; that eighteen of the ballots cast in favor of the acceptance of the charter were surreptitiously and illegally placed in the ballot box, and that in addition thereto, nine persons, who actually voted in favor of such acceptance, and whose votes were counted, were not by the terms of the charter legal voters at such meeting, and therefore, that, in fact, of the legal voters of the village, present at the meeting, fifty-one voted against the acceptance of the charter, and only forty-four in favor of it, and that the act of incorporation thereby became void ; that the meeting then proceeded to organize the corporation of the village of Bradford in pursuance of the provisions of the act, and that it appeared by the records of such proceedings that the village of Bradford was a corporation, and claimed and was exercising corporate powers ; that at such meeting several persons, being all the defendants except the corporation itself, were chosen by a small minority of

* See Acts of 1858, p. 111.

the legal voters present, officers of such corporation, (naming them respectively,) and that they had severally accepted the offices to which they were chosen, and had entered upon the duties thereof, and still claimed to hold said offices respectively, and to exercise the duties thereof under and by virtue of the provisions of the charter, though notified of the frauds perpetrated at the meeting as above mentioned.

The State's attorney also prayed for a summons against the defendants to appear before the court to show cause why the information should not be filed, and that the court would make such order as to the taking of testimony as they should deem proper.

The court issued a summons according to the prayer of the State's attorney, and ordered that the testimony should be taken in the form of affidavits upon notice to the adverse parties.

Testimony was taken by the prosecution in the manner prescribed, which it is not necessary to repeat, as it tended to sustain the allegations of the information, and as no testimony was taken on behalf of the defendants. The defendants, who were alleged to be acting as officers of the usurping corporation, filed an affidavit disclaiming any purpose of exercising the functions of the offices to which they had been elected.

*Charles C. Dewey*, State's Attorney, with whom was *R. McK. Ormsbee*, for the prosecution, cited *Rex* v. *Latham*, 3 Burr. 1486; 1 W. Black 468; Tancred on *Quo Warranto* 35; Willcock on Corporations 473; *Rex.* v. *Corp. of Camarthen*, 2 Burr. 869; *Commonwealth* v. *Union Ins. Co*, 5 Mass. 230; *State* v. *Boston, Concord & Montreal R. R. Co.*, 25 Vt. 441; Redfield on Railways, chap. 27, p. 472; *King* v. *Tate*, 4 East. 237; *Rex.* v. *Powell*, Sayer 239; *Regina* v. *Blagden*, 10 Mod. 298.

REDFIELD, CH. J. This is a motion and summons against the defendants, wherein the State's attorney, as the representative of the sovereignty of the State, asks leave to file an information against the nominal and *de facto* corporation of the village of Bradford, for having usurped the prerogatives and franchises of a municipal corporation within the State, without the grant or

permission of the State; and against the other defendants for having unlawfully and without proper warrant, presumed to hold and exercise the offices of such usurping corporation.

The corporation make no answer or defence in form, except to put the prosecutor upon proof of the allegations contained in his information. We are satisfied from the evidence in the case, that there could not have been a legal majority of the voters present at the meeting in favor of accepting the charter, and that it did not therefore become a binding law. The organization therefore under it is a mere usurpation of corporate franchises, without any legal warrant.

In such cases the law is well settled, in England, that upon the information of the attorney general the court of King's Bench will abate and dissolve the corporation, whether it be a private or public one. When the corporation is of a public character, like a town, or village, which constitute integral portions of the sovereignty itself, there is more propriety in visiting the usurpation of these important functions of sovereignty, with this formal denial of their right to exercise such usurpation, than in the case of a mere private corporation, but the law seems to be the same in either case.

It is only the sovereign power of the State which can create corporate franchises, and all who presume to exercise them without the consent of such authority are liable to this mode of proceedure.

We think there can be no question that the corporation *de facto* should be dissolved.

And in regard to the other defendants it seems that they now disclaim any purpose of exercising the functions of the offices to which they were elected, and of which election a formal record was made, and which has been certified in this case by one of the defendants, as secretary of the usurping corporation. All that is requisite in regard to them will be effected by a judgment against the corporation, perhaps, but we see no reason why a judgment of ouster should not be formally entered against them. If the title to a corporate office is only defective from an irregular swearing in, the judgment against the party is only for a fine for the temporary usurpation, and that he do not further exercise

the office until sworn. *Rex .v. Clark,* 2 East. 75 ; 9 East. 246 *et seq.* Judgment of seizure of the franchises to the use of the King may be given against a corporation upon a disclaimer, and this will preclude the party from afterwards setting up the same title. S. C. and *Rex* v. *Ware,* 3 B. and A. 590 ; *Rex* v. *Chester,* 2 Shower 365 ; on a *nil dicit* to a *quo warranto* information, the judgment is *quod capiatur; Rex* v. *Tyrrell,* 11 Mod. 235. Where the franchises are usurped the judgment is *quod extinguantur.* Smith's case, 4 Mod. 54, 56. Judgment was given in *quo warranto* against the city of London, that the liberties thereof being seized into the King's hands did not dissolve the corporation or remove the officers from their corporate offices. But where the corporation is intended to be dissolved, judgment to that effect should be formally entered. *Sir James Smith's Case,* 4 Mod. 52 ; 14 Petersdorff 111 N.

In regard to costs it is not customary in the English courts to award them against an officer·in a municipal corporation, where one is compellable to accept upon peril of indictment or penalty ; and from which no emoluments are ordinarily expected to arise. *The King, at the relation of R. King* v. *Wallis,* 5 Term. R. 375. But where there has been misconduct, either in the usurpation or unreasonable persistence in holding on upon the office, it may be proper to award costs. And by the statute of 9 Ann. c. 20, sec. 5, it is provided that the courts may in such case award both fine and costs against the defendant; and that the defendant shall recover costs against the relator, whenever he prevails in the trial.

In the case of *State* v. *Boston, Concord & Montreal R. R. Co.,* 25 Vt. 445, it is said " and as the proceedings have been in the name of the State, no costs can be awarded." But upon further examination I am satisfied costs are awarded, in the English practice, in such cases, against the relator, whose name is there always brought upon the record, and should be here probably. The subject of costs in such proceedings is very elaborately discussed by *Buller J.* in *Rex* v. *Wallis,* 5 T. R. 375.

Judgment that the State's attorney be allowed to file his information ; and therefore the court do adjudge that the facts therein set forth are true, and that the said pretended corporation of the

village of Bradford be, and the same hereby is, dissolved, and that the other defendants no longer exercise any of the functions pertaining to said offices, but that no costs be taxed against any of the defendants.

The reason we do not allow costs in this case is that there is no distinct evidence that these defendants have participated in any illegal or improper proceedings, in effecting the organization under the charter.