CHARLES  H.  CAMPBELL  &  another  *vs.*  CHARLES  P.  TALBOT.
& another.

Middlesex.    March 7, 1881. — January 3, 1882.    ENDICOTT, DEVENS
& ALLEN, JJ., absent.

On a complaint under the mill act, the parties submitted the case to the Superior
Court, and to this court, on appeal, after a judgment for the respondent, on
an agreed statement of facts, which concluded as follows: "The parties hereto
admit the foregoing facts for the purpose of raising the preliminary question
of law arising thereon; and the facts so admitted are not to be used by either
party, without proof of the same, at any trial of this or any other cause."
*Held*, that this meant that the facts agreed were to be passed upon by the
court as if the complainant 'had made an offer of proof, and the Superior Court
had ruled that, if proved, they would not warrant proceedings for the assess-
ment of damages by a jury; and that, so construed, the court might pass upon
the question presented.

A judgment of ouster entered by this court, upon an information in the nature
of a *quo warranto*, against a corporation owning a mill privilege, upon which
it has erected and maintained a dam, excludes the corporation from the right
to exercise 'its franchises; and a grantee of the corporation, by deed dated
prior to the entry of such judgment, acquires a prescriptive right to maintain
the dam, as against the owner of land flowed by the dam, by maintaining the
same for more than twenty years after the date of the judgment.

COMPLAINT under the Gen. Sts. *c.* 149, for flowing with the
respondents' dam the lands of the complainants in Wayland and
Sudbury.   The case was submitted to the Superior Court, and,
after judgment for the respondents, to this court, on appeal,
upon an agreed statement of facts, the material parts of which
appear in the opinion, and which concluded as follows: " The
parties hereto admit the foregoing facts for the purpose of rais-
ing the preliminary question of law arising thereon; and the
facts so admitted are not to be used by either party, without
proof of the same, at any trial of this or any other cause."

*T. P. Proctor*, (*H. S. Milton* with him,) for the complainants.
*J. G. Abbott & S. Lincoln, Jr.*, for the respondents.

MORTON, J.   The phraseology used by the parties at the con-
clusion of the statement of facts is unusual, and is liable to
misconstruction.   We are, however, satisfied that the parties
intended that the facts as agreed should be passed upon by the
court as if the complainants had made an offer of proof of them,
and the Superior Court had ruled that, if proved, they would

not warrant proceedings under the statute for the assessment of damages by a jury. Any other construction would put court and parties in the position of deciding and arguing a moot question; and the words, "and the facts so admitted are not to be used by either party, without proof of the same, at any trial of this or any other cause," must necessarily be confined to proceedings before a jury, in case a jury should be ordered, and cannot be applicable to this hearing. In this view we proceed to consider the question whether upon these facts this complaint can be maintained.

The facts, so far as they are material to our decision, are as follows. The corporation known as the Proprietors of the Middlesex Canal was chartered in 1793, with certain rights and privileges set forth in the act of incorporation. St. 1793, *c.* 21. In 1798, an additional act was passed empowering the corporation to purchase and hold any mill-seats on the waters connected with their canal, and to erect mills thereon. St. 1798, *c.* 16. The corporation in 1794 took a deed from Thomas Richardson of an old mill privilege, on Concord River, and in 1798 erected a new dam thereon, for the purpose of raising a head of water to supply its canal, using the surplus to operate its mills which it maintained for manufacturing purposes. In 1828, the corporation built a new and more permanent dam upon the site of the old one. This dam built in 1828 is the structure complained of. The corporation carried on its canal, using the water therefor and for manufacturing purposes until 1851, when its canal was wholly disused and abandoned. At the time of the abandonment, by deed dated September 22, 1851, it conveyed to the respondents all its land and water power, with certain reservations or limitations which are not now material. Since said deed was delivered, the respondents have maintained said dam, and the head of water raised by it without interruption for manufacturing purposes, and have claimed the right to do so under said deed.

In 1859 the Legislature by a resolve directed the Attorney General to institute and prosecute an information in the nature of a *quo warranto* or other suitable process, against the Proprietors of the Middlesex Canal, in the Supreme Judicial Court, requiring them to show cause why their charter should not be adjudged forfeit. Resolves of 1859, *c.* 38. Such an information

was filed by the Attorney General in the Supreme Judicial Court for the county of Middlesex; and thereupon, on October 3, 1859, it was decreed by the court that the said Proprietors of the Middlesex Canal, or any persons pretending to hold the privileges, franchises and liberties of said corporation, do not in any manner have, hold, use, exercise or enjoy the several franchises, privileges and liberties in said information specified, under and by virtue of any authority conferred by any act of the General Court of this Commonwealth, but that the said Proprietors of the Middlesex Canal be absolutely forejudged and excluded from having, holding, using, exercising or enjoying said franchises, privileges and liberties. In 1860, the Legislature passed an act which, after reciting said decree, enacted that all the privileges, liberties and franchises of the Proprietors of the Middlesex Canal are declared seized into the hands of the Commonwealth, forfeited and annulled in consequence of the nonfeasance and misfeasance of said corporation, and the neglect of their corporate duties, in accordance with said judgment and decree. This act was approved April 4, 1860. St. 1860, c. 203.

Upon these facts the respondents contend that the deed of 1851 from the corporation conveyed to them a title in fee, which was not defeated or impaired by the forfeiture and extinguishment of its franchise. We have not found it necessary to consider this question, because we are of opinion that the facts show that the respondents have acquired by prescription the right to maintain the dam at its present height. Since 1851 they have maintained and used this dam without interruption under a claim of right. But the complainants contend that, although the dam has been built and has been used under a claim of right for more than twenty years, yet the respondents cannot claim a right by prescription to flow the land of the complainants, because they did not begin to hold adversely to the complainants until April 4, 1860, and this proceeding was commenced on April 2, 1880. Their argument is that it was decided in *Heard* v. *Talbot*, 7 Gray, 113, that the respondents could justify their maintenance of the dam under the right and franchise of the corporation so long as it had a legal existence, and therefore that their use of the dam could not be adverse to the complainants until the corporation was extinguished by the Legislature.

If we admit in favor of the complainants, without deciding, that the respondents' use of the dam could not be adverse as to the complainants so long as the respondents could justify their use under the franchises of the corporation, yet the ground of the complainants cannot be maintained. It leaves out of view entirely the necessary effect of the judgment of ouster cited above, rendered in 1859. The case of *Heard* v. *Talbot* was decided in 1856, at which time the corporation had not only a legal existence, but the full capacity to act and to exercise all its franchises. But the subsequent decree of 1859 destroyed or suspended the capacity of the corporation to exercise any of its franchises.

Upon an information in the nature of a *quo warranto*, which in our practice has superseded the ancient writ of *quo warranto*, the judgment may be that the franchise usurped be seized into the sovereign's hands, if it be one which the sovereign can repossess and enjoy, or it may be a judgment of ouster. *Rex* v. *Mayor of London*, 1 Show. 274, 280. *Rex* v. *Mayor & Aldermen of Hertford*, 1 Ld. Raym. 426, and 3 Salk. 374. Com. Dig. Quo warranto, C. 5. Cole Inform. 336. *Attorney General* v. *Salem*, 103 Mass. 138, and cases cited.

In this Commonwealth, in the case of a business corporation, where the object of the information is merely to declare the charter forfeited and to exclude the corporation from the right to further exercise its franchises, a judgment of ouster is appropriate. Strictly and technically a judgment either of seizure or of ouster probably does not dissolve the corporation, but it at least suspends the right to exercise its franchises. 2 Kyd Corp. 395–516. Grant Corp. 295–309. In this case the court entered a judgment of ouster against the corporation on October 3, 1859. The law presumes this judgment to have been known by all, and it bound all the world. The necessary effect of the judgment, whether it was followed by an execution or not, was to exclude the corporation from the right to exercise any of its franchises, privileges or liberties, and no grantee or licensee of the corporation could thereafter justify his action under its rights or franchises. If the complainants had brought a suit at any time after the judgment was rendered, the respondents could not have justified their maintenance of the dam under the franchise of the corporation, as they did in *Heard* v. *Talbot*. Their

occupation was adverse at least as early as the date of this judgment, and that was more than twenty years before this complaint was brought.

We are therefore of opinion, without considering the other questions in the case, that the respondents have shown a right by prescription to maintain the dam at its present height, and to flow the complainants' lands; and that this complaint cannot be maintained.                    *Judgment for the respondents.*