# THE PEOPLE *ex rel.* Charles P. Swigert

## *v.*

## THE GOLDEN RULE *et al.*

### *Filed at Ottawa May 15, 1885.*

1. QUO WARRANTO—*by Auditor against insurance company—nature of the proceeding, as a private or public prosecution.* The Auditor of Public Accounts is given, by statute, supervision over life as well as other insurance companies; and when companies assume to insure without having sufficient legal authority, it is within the line of his duty to cause them to be prosecuted, and to be deprived of their assumed franchises. An information in the nature of a *quo warranto,* filed by the Attorney General on the relation of the Auditor, against a private corporation assuming to insure, is not a private but a public prosecution. In this regard, such a case is not analogous to that of *The People ex rel. v. North Chicago Ry. Co.* 88 Ill. 538. There the application was by a private party to file an information, while here it is by the Attorney General, at the instance of the Auditor of Public Accounts, in the performance of his duties as a public officer.

2. SAME—*leave to file information without a rule nisi.* Under the present statute the court, or judge thereof in vacation, may act upon the petition of the relator for leave to file an information in the nature of a *quo warranto,* without first laying a rule upon the respondents to show cause against granting the leave, and, if satisfied that there are probable grounds for the filing of the petition, allow it to be filed.

3. SAME—*proceedings after leave granted—power of the court to vacate the order granting leave—upon what grounds.* Where a circuit court, in term time, allows an information in the nature of a *quo warranto* to be filed, and orders a summons to be issued, the discretionary powers of the court are exhausted, and the issues of fact or of law presented by the pleadings must then be tried. If the information is insufficient, the respondents should demur, otherwise they should, by plea, set up any defence they may have.

4. If leave to file the information is granted, and an order made by the court for the issue of summons, upon a misapprehension of some fact material to be known before making such order, but for the supposed existence of which it would not have been made, it is competent for the court to vacate the order at any time during the term at which it is made.

5. Where the court has, on a proper affidavit showing probable cause, granted leave for the filing of an information by the Attorney General, it will be error to vacate the order granting leave for reasons or grounds which should be interposed as a defence on the final hearing.

6. LIFE INSURANCE—*when in the nature of a wager.* It would seem that a policy or certificate for the payment of a premium to one who may hold a number next to that held by the one who dies, and solely because he does die, makes the transaction in the nature of a wager upon the life of one in whom the party thus benefited has no interest, and is therefore illegal.

7. POWERS OF JUDGE *in vacation.* A judge of a circuit court in vacation can make orders only to the extent the statute authorizes him to do. The statute is the measure of his authority in vacation. He can enter no general orders, and can render no judgment in vacation, merely by virtue of his general powers as judge.

APPEAL from the Circuit Court of Warren county; the Hon. JOHN J. GLENN, Judge, presiding.

On the 6th of January, 1885, the Attorney General entered a motion in the Warren circuit court for leave to file an information in the nature of a *quo warranto,* in the name of the People of the State of Illinois, on the relation of the Auditor of Public Accounts, against the "Golden Rule," O. S. Barnum, T. S. Stamps, J. H. Wallace, John Troutman and W. B. Young, and in support of the motion he filed the following affidavit:

"Charles P. Swigert, being duly sworn, upon oath deposes and says that he is Auditor of Public Accounts of the State of Illinois, and has been for one year last past; that as he is informed and believes, O. S. Barnum and others filed in the office of the Secretary of State of the State of Illinois, on the 21st day of February, 1884, a certificate signed and acknowledged, and proposing to organize a body corporate, not for pecuniary profit, under an act concerning corporations, in force July 1, 1872, and that on said February 21, 1884, said Secretary of State issued his certificate, under his hand and the great seal of State, declaring the said corporation duly organized under the name 'The Golden Rule.' O. S. Barnum, J. H. Wallace, T. S. Stamps, John Troutman and W. B. Young were elected as directors to manage and control the business of its corporate existence, and they accepted

said office and entered upon the performance of its duties. Affiant is informed, and understands from information furnished him by the officers of said association, that the real and actual business of said corporation, as carried on by and under the direction of said directors since its organization, is, and has been, to solicit and receive applications for membership in said corporation, and to grant to such persons as were and are accepted as members, a certificate, which, together with the rules and regulations of said corporation, bound it, upon the death of a member, to serve notice of such death upon the surviving members thereof, and to make collections of money, or receive contributions from the surviving members, and to pay out seventy-five per cent of the money so received, not exceeding $1500, to a person named therefor in the deceased member's application, and twenty-five per cent thereof to the two persons who hold or held valid existing certificates of membership in said corporation, number next above and below the number of the certificate held by the deceased member.

"As further and more fully illustrating the manner of doing business, and the kind of business done by said corporation, affiant attaches hereto, and refers to, a blank form of application for membership, and marked 'Exhibit A.' Also blank form of certificate, marked 'Exhibit B.' Also book of constitution and by-laws of said corporation, marked 'Exhibit C.' All of which papers and exhibits were received by me from the officers of said corporation, as illustrative of the business done by it.    [Signed]    CHARLES P. SWIGERT."

A sufficient *jurat* is attached. It is not deemed necessary to set out the exhibits.

The court allowed the motion, and thereupon the Attorney General filed the following information, omitting the caption:

"James McCartney, Attorney General of the State of Illinois, who sues for the People of the State of Illinois, comes

now, etc., and at the relation of Charles P. Swigert, Auditor, etc., gives the court to understand (setting forth in detail the organization of the 'Golden Rule,' as shown by the preceding certificate, its objects, the election of officers as therein shown, and that said corporation and its said officers entered upon the exercise of their respective powers,) and that February 21, 1884, said corporation, under the direction of said directors, unlawfully solicited and received applications for membership therein; that by the rules of said corporation each member was required to pay five dollars for his admission to membership, also a semi-annual fee of fifty cents, and to make payments upon the death of a member, from which is established a fund denominated by said corporation a beneficiary fund. Said corporation received from its members applications for an interest in said fund. Such applicants were required to accompany said application with their agreement that in case they should be admitted to participation in such beneficiary fund, if they should cease to be a member of the order in accordance with the rules, or fail to pay all dues promptly when notified by the secretary, said applicant should forfeit all rights to participate in said beneficiary fund. Applicant was also required to state the name of a person to whom he desired benefits paid upon his death. Applicant was required to state his age, race, place of birth, occupation, habits and physical condition, age, or cause of death, of his parents; that to members accepted, the corporation gave a certificate in writing, under the corporate seal, signed by the president and secretary, which certificates were numbered according to their order of issue, binding itself to pay to the person named therefor in the application and in the certificate, upon the death of the member, seventy-five per centum of the money received by said corporation from the surviving members in response to notices of such death, issued by the secretary, and not exceeding $1500, and to pay to persons holding certificates numbered next above and

next below that of the deceased member, twenty-five per cent of said amount, and not exceeding $500, all of which powers, etc., said corporation and said directors have usurped, etc.

"*Second count*—After setting forth the incorporation of the 'Golden Rule,' as before, and the selection of directors to manage the business, as before shown, charges that said corporation, by and through its directors, officers, etc., wrongfully, and without authority of law, did engage in and transact a life insurance business, and for a valuable consideration did obligate said corporation to pay, upon the death, and proper proof thereof, of a member of said corporation, a sum of money to other persons not the widow, orphans, heirs or devisees of such deceased member, which powers, franchises, etc., said corporation and its officers, during, etc., have wrongfully usurped, etc.

"*Third count*—Sets forth the organization of the corporation and selection of officers. Said corporation, under the direction of said directors, unlawfully solicited and received applications for membership and participation in the benefits arising therefrom, and to such as were satisfactory said body corporate and directors issued a certificate, under the corporate seal and the hand of the president and secretary, in and by which certificate, in connection with the application therefor and the rules of said corporation, said corporation unlawfully bound itself, for a valuable consideration, upon the death of a member thereof, to notify the surviving members, and to collect and receive such payments or contributions of money as might be made by the surviving members, and to pay to a person named therefor in the deceased member's certificate, seventy-five per cent of the money so collected, not exceeding $1500, and to pay the remainder, not exceeding $500, equally to the two persons holding certificates next above and next below, in numerical order, the certificate of the deceased members,—all of which powers and franchises said defendants have unlawfully usurped, etc., to the damage and

prejudice of the People of the State of Illinois, and against the peace and dignity of the same; prays the consideration of the court, and process against the 'Golden Rule,' O. S. Barnum, T. S. Stamps, J. H. Wallace, John Troutman and W. B. Young, to make them answer to the said People by what warrant they claim to hold and exercise the franchises aforesaid.

James McCartney, *Attorney General.*"

Summons was thereupon issued to the respondents by order of the court, returnable to the same term of court, on the 13th of January, the then present month. The summons was returned served upon all the respondents, the next day after it was issued,—*i. e.*, the 7th of January. On the return day of the summons the respondents appeared in open court, by their attorneys, and filed their motion to vacate the order granting leave to file the information, and also to quash the writ and dismiss the suit, and in support of the motion they filed an affidavit. The Attorney General objected that the court should entertain jurisdiction of the motion, but the court overruled the motion, to which ruling exception was taken. The following reasons were assigned in support of the motion:

*First*—Because no notice was given of the application for leave to file the information.

*Second*—A rule *nisi* was not entered, and served on the defendants, before leave given to file information.

*Third*—The petition, and affidavit in its support, and the exhibits made a part thereof, show upon their face the right of the defendants to exercise the corporate powers charged to have been usurped.

*Fourth*—The petition, affidavit and exhibits filed by the plaintiff show no cause of action.

*Fifth*—There is no probable ground for the proceeding in this case.

*Sixth*—The leave to file the information was improperly granted.

*Seventh*—The information does not set forth any cause of action mentioned in the statutes, against the defendants, on which an information in the nature of a *quo warranto* may be prosecuted.

*Eighth*—The defendant order of the "Golden Rule" is a secret society, having a supreme and subordinate council, and is therefore exempted by law from the control of the Auditor of Public Accounts.

*Ninth*—The order of the "Golden Rule" makes no assessments upon its members for its beneficiary fund, and therefore it is a purely social, and not a benevolent, organization, making assessments upon its members, and in no manner is an insurance company over which the Auditor has control.

*Tenth*—The "Golden Rule" is an organization of a purely social and benevolent character, where no commissions are paid, and no salaried officers or agents employed, and is therefore exempt from the laws governing insurance companies, and corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to widows, orphans, heirs, relatives and devisees of deceased members, or accident or permanent disability indemnity to members thereof.

The court sustained the motion, and entered an order vacating the order for leave to file the information, quashing the writ, and dismissing the suit, to which there was exception.

Mr. E. S. SMITH, for the appellant:

Upon the question of practice in *quo warranto* proceedings, it is claimed that after leave has been granted in open court to file an information, and it has been filed, and summons issued and served, the defendants must plead or demur, and can not have a trial of the case upon affidavits of defendants to the merits of the case, upon a motion to vacate the order granting leave to file the information, to quash the writ, and dismiss the suit. Rev. Stat. chap. 112, secs. 1-4; Practice

act, chap. 110, sec. 11; *People ex rel.* v. *Morse,* 73 Ill. 132; *People* v. *Improvement Co.* 103 id. 491; *Holden* v. *People,* 90 id. 434.

I understand the proper practice to be, for the information to set forth the usurpation in general terms, and plea follows specifically setting forth defendant's title, then replication setting forth specific acts of forfeiture or want of title. *Hinze* v. *People,* 92 Ill. 407; *People* v. *Improvement Co.* 103 id. 491; *People* v. *Railroad Co.* 12 Mich. 389; *Commonwealth* v. *Commercial Bank,* 28 Pa. St. 383; *Attorney General* v. *Railroad Co.* 6 Ired. 464; *People* v. *Richardson,* 4 Cow. 106; *People* v. *Insurance Co.* 15 Johns. 358.

When a member applied for and received a certificate entitling him to one-half of twenty-five per cent of the amount collected upon the death of the members holding certificates numbered next above and below his certificate, he, in effect, took out a policy of insurance upon the lives of the two members to the extent of twelve and a half per cent of the amount collected upon the death of either or both of them, and such a policy is a wager policy, and it is contrary to public policy to permit that kind of business to be done. (*Life Ins. Co.* v. *Hogan,* 80 Ill. 35.) And as said in Duer on Insurance, it is as a crime, and not as an agreement, that such should be treated.

Mr. JAMES McCARTNEY, for the appellees:

This is a suit brought by an individual relator, and notice should have been given to the defendants before leave was granted to file the information. High on Extraordinary Legal Remedies, secs. 608, 697.

Notice not having been given defendants of the petition for leave to file the information, it was proper, on the return day of the writ, to move to vacate the leave, quash the information, and dismiss the suit. High on Extraordinary Legal Remedies, sec. 731, *et seq.; Commonwealth* v. *Jones,* 12 Pa. St.

365; *People ex rel.* v. *Morse,* 73 Ill. 132; *People* v. *Mobley,* 1 Scam. 215; *People* v. *Shaw,* 14 Ill. 476; *People* v. *Waite,* 70 id. 25; *People* v. *Railroad Co.* 88 id. 538; *Commonwealth ex rel.* v. *Bank of America,* 10 Phila. 126.

The petition and affidavit of Swigert showed no sufficient ground for leave to file the information. · They did not allege that the defendant society secured its benefits by assessments on surviving members.   This is not an organization securing its benefits in whole or in part by assessments upon the surviving members, and therefore does not come under the law of 1883.   The defendant society is of a purely social and benevolent character, and is excluded by the proviso to section 9 of the law of 1883, from the control of said law.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case is not analogous to that of *The People ex rel.* v. *North Chicago Ry. Co.* 88 Ill. 538, as seems to be claimed by counsel for appellees.   There the application was by a private party to file an information.   Here it is by the Attorney General, at the instance and upon the affidavit of the Auditor of Public Accounts.   It is provided by section 15, chapter 12, of the Revised Statutes of 1874, that "the Auditor shall be deemed the proper officer to institute all suits, motions, and other proceedings in law and equity, in which the State is plaintiff, except in cases otherwise provided by law."   By other provisions of the statutes the Auditor is given supervision over life as well as other insurance companies, and where companies assume to insure without having sufficient legal authority, it is within the line of his duty to cause them to be prosecuted, and to be deprived of their franchises, etc. And by the second subdivision of section 4, chapter 14, of the Revised Statutes of 1874, it is made the duty of the Attorney General "to institute and prosecute all actions and proceedings in favor of or for the use of the State, which

may be necessary in the execution of the duties of any State officer." There is not, therefore, in our opinion, the slightest foundation for the position that this is a private prosecution. It is a suit instituted by appropriate public officers in respect to a matter which concerns, so far as we are able to perceive, the public alone.

The question now comes before us for the first time whether, under the first section of the amended and revised act in relation to *quo warranto*, of March 23, 1874, (Rev. Stat. 1874, chap. 112, p. 787,) it is necessary to lay a rule upon the respondents to show cause against it, upon presenting a petition to the court or judge for leave to file an information in the nature of a *quo warranto*. The language of the prior statute was : "It shall and may be lawful for the Attorney General, or the circuit attorney of the proper circuit, with the leave of any circuit court, to exhibit to such court one or more information or informations in the nature of a *quo warranto*, at the relation of any person or persons desiring to sue or prosecute the same, * * * and to proceed therein in such manner as shall be usual in cases of informations in the nature of *quo warranto*," (Gross' Stat. 1869, p. 533,)—thus adopting, unmistakably, the common law practice in that respect; and so we said in *The People ex rel.* v. *Waite*, 70 Ill. 25 : "The mode for instituting such proceedings is, usually, as pursued in the case at bar. The State's attorney submitted a motion, based on affidavit, for leave to file an information in the nature of a *quo warranto*. A rule *nisi* was laid on defendant to show cause why the information should not be filed. Respondent answered the rule by counter affidavits."

But the language of the section now under consideration varies materially in this respect. It provides that "the Attorney General, or State's attorney of the proper county, either of his own accord or at the instance of any individual relator, may present a petition to any court of record of competent

jurisdiction, or any judge thereof in vacation, for leave to file an information in the nature of a *quo warranto,* in the name of the People of the State of Illinois; and if such court or judge shall be satisfied that there is probable ground for the proceeding, the court or judge may grant the petition, and order the information to be filed and process to issue." This change in phraseology is so marked that we think it clear it was intended not to adhere to the former practice. If it was intended to adhere to it, why change the language of the statute? Authority is given by the present statute to the judge in vacation, as well as to the court, to act upon the petition. But a judge in vacation can make orders only to the extent the statute authorizes him to do so. · He possesses no docket, can enter no general orders, and render no judgment in vacation, by virtue of his general powers as judge; and when he is, by statute, authorized to act in vacation, the statute itself is the measure of his authority. In *The People ex rel.* v. *Moore et al.* 73 Ill. 132, we held, while not passing upon this question, that the fact that the court, before acting upon the relator's petition, entered an order for a rule on the respondents to show cause, etc., did not render his act in subsequently refusing leave to file the information, erroneous; but we there intimated that the court might have acted upon the petition alone. We now hold that the court or judge may, under the present statute, act upon the petition of the relator without first laying a rule upon the respondents to show cause, and if satisfied that there are probable grounds for the filing of the petition, allow it to be filed. No hardship can result from this, when it is reflected that the summons, if ordered in vacation, must be returnable on the first day of the next succeeding term; and if ordered in term time, it must be returnable on any day of the same term, not less than five days after the date of the writ, as shall be directed by the · order of the court, (see Quo Warranto act, sec. 2,) and that the respondents, upon the return to the writ, may demur to

the information, and thus test its sufficiency; or, if it be sufficient, by plea set up any defence why judgment should not be pronounced upon it against the respondents. (See Quo Warranto act, sec. 4.) When the court had here allowed the information to be filed, and ordered the summons to be issued, its discretionary powers were exhausted, and the issues of fact and of law presented by the pleadings must then have been tried and determined "in accordance with the strict rules of law, in the same manner, and with the same degree of strictness, as in ordinary cases." (High on Extraordinary Legal Remedies, latter part of section 606.) It is not denied that if the order to issue the summons had been made under a misapprehension of some fact material to be known by the court before making such order, and but for which it would not have been made, it would have been competent for the court to vacate the order at any time during the term. But the court here acted upon no such mistake. It simply allowed that which should have been interposed as a defence on the final hearing, to be urged as a ground for vacating the order.

With regard to the merits of this case we desire to express no opinion, further than to say we think there is probable cause for allowing the information to be filed and the summons to issue. Although the payment of dues to a corporation on account of fees or assessments upon its members, may be purely voluntary, persons may acquire legal rights to share in them when they are paid. Through forfeiture of benefits, etc., payments of dues on account of fees or assessments may be almost, if not quite, as effectually enforced as by legal process. At present we do not perceive why the payment of a premium to one who holds a number next to that held by the one who dies, and solely because he does die, is not, in effect, in the nature of a wager upon the life of one in whom the party thus benefited has no interest, and why, therefore, the transaction is not within the condemnation of the principle announced in *Guardian Mutual Life Ins. Co.*

v. *Hogan,* 80 Ill. 35.   And see, also, to like effect, *Carman* v. *Wetherbee,* 105 Mass. 149; *State* v. *Standard Life Ins. Co.* 38 Ohio St. 281.   At all events, it can not be said the questions are so clear and free from doubt that there are not probable grounds for allowing the petition to be filed.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*