## ATTORNEY GENERAL *vs.* JOHN E. SULLIVAN.

Middlesex. April 1, 1895. — May 21, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Information in the Nature of a Quo Warranto — Right to Trial by Jury — Constitutional Law.*

The defendant in an information in the nature of a *quo warranto* brought to try his title to the office of president of the common council of a city has no constitutional right to a trial by jury.

FIELD, C. J. This is an information in the nature of a *quo warranto* to try the title of the defendant to the office of president of the common council of the city of Lowell, and the single question before us is whether the defendant is as of right entitled to a trial by jury.

So far as we know, the first time the words "*quo warranto*" are found in the statutes, whether of the Colony, Province, or Commonwealth, is in the Rev. Sts. c. 81, § 5, wherein the Supreme Judicial Court is given power "to issue writs of error, certiorari, mandamus, prohibition, and *quo warranto*; and all other writs and processes to courts of inferior jurisdiction, to corporations and individuals, that shall be necessary to the furtherance of justice and the regular execution of the laws." This provision is now found in Pub. Sts. c. 150, § 3. Of this section in the Revised Statutes the Commissioners say, "This power has always been exercised by the Supreme Judicial Court, though not expressly mentioned in the statutes." Commissioners' Report, c. 81, § 5, notes.

No form of the writ of *quo warranto* has ever been prescribed in this Commonwealth. So far as we know, an information in the nature of a *quo warranto* is first mentioned in our statutes in St. 1851, c. 233, §§ 55–64. This statute was repealed by St. 1852, c. 312, and §§ 42–50 of said last named statute substituted therefor. See Pub. Sts. c. 186, §§ 17–25. These sections in St. 1852, c. 312, empowered any person whose private right or interest has been injured or is put in hazard by the

exercise by a private corporation, or by persons claiming to be a private corporation, of a franchise or a privilege not conferred by law, to apply to the Supreme Judicial Court for leave to file an information in the nature of a *quo warranto*, and they regulated the proceedings. Both the writ of *quo warranto* and the information in the nature of a *quo warranto* were common law processes. The writ was an original writ issued out of chancery, and was regarded as a writ of right on the part of the Crown, and was exclusively a civil process. The information in the nature of a *quo warranto* was originally a criminal proceeding in which, if the issue was found against the defendant, in addition to a judgment of ouster a fine might be imposed. The colonists of Massachusetts were familiar with the writ of *quo warranto*, and were in great fear that their charter would be seized into the King's hands on such a writ, and the writ was actually issued and served upon the officers of the Colony, a copy of which is found in 5 Mass. Col. Rec. 421. This writ was not prosecuted, and the Charter was subsequently cancelled on *scire facias* in chancery.

From such investigation as we have been able to make, we cannot find that the writ of *quo warranto* was ever actually used in the Colony, Province, or Commonwealth. There were no private business corporations in the Colony or Province until near the time of the Revolution, and perhaps only one private corporation of any kind in Massachusetts before the year 1772, namely, that of Harvard College. See, for acts of incorporation in 1772, 5 Prov. Laws, (State ed.) 177–179. The municipal corporations of towns and the parishes were always subject to the control of the Legislature, and they bore little resemblance to the cities and boroughs in England, and neither the writ nor the information has ever been used here to try the title of the inhabitants to their municipal franchises, although the question whether either proceeding can be used for such a purpose has never been decided. See *Attorney General* v. *Salem*, 103 Mass. 138; *State* v. *Bradford*, 32 Vt. 50. There were no ecclesiastical corporations here, in the English sense of that term. There was therefore probably nothing in the Colony or Province which could be brought within the reach of a writ of *quo warranto*, or of an information in the nature of a *quo war-*

*ranto*, except the public offices. Whether the information in the nature of a *quo warranto* was used during the Provincial period to try the title to public offices we have no knowledge, as only a partial search of the records has been made. The earliest printed reports of cases decided since the adoption of the Constitution show a familiarity on the part of the judges with an information in the nature of a *quo warranto* to try the title to a public office, and apparently the judges at first followed the practice in England under St. 9 Anne, c. 20, which did not in terms extend to the Colonies. See *Commonwealth* v. *Athearn,* 3 Mass. 285 ; *Commonwealth* v. *Smead,* 11 Mass. 74.

At common law the attorney general, *ex officio,* has the right either to sue out a writ of *quo warranto,* or to bring an information in the nature of a *quo warranto,* to try the title to a public office, and is not compelled to ask leave of the court; but no private individual at common law has a right to use the name of the attorney general for the purpose of suing out such a writ, or of bringing such an information. The practice of permitting a private individual to apply to this court for leave to file an information in the nature of a *quo warranto* rests, it seems, in this Commonwealth, upon statute. This is explained in *Goddard* v. *Smithett,* 3 Gray, 116. In that case the court say : " There is, and always has been, in this Commonwealth, an authority in the attorney and solicitor general, as incident to the office, to file informations *ex officio* in the name and behalf of the Commonwealth. The information is in its nature a prosecution for some offence against the government, by an application to a court of criminal jurisdiction, and is essentially a public criminal prosecution. When filed by the attorney general, it is done at his own discretion, according to his own view of the rights of the government, without leave of court, nor will the court direct or advise him on the subject." See *Commonwealth* v. *Allen,* 128 Mass. 308.

The English statutes on the subject may be found in Cole, Inform. 115 *et seq.,* and Shortt, Inform. 108 *et seq.* Our statutes concerning informations in the nature of a *quo warranto* have no application to the present case, as these statutes relate solely to private corporations, or to persons claiming to be a private corporation, and the Pub. Sts. c. 150, § 3, empowering

this court to issue writs, relates to writs of *quo warranto*, and not to informations in the nature of a *quo warranto*. The writ of *quo warranto* seems to have become obsolete in England before our Revolution, and from the precedents here, so far as we know, an information in the nature of a *quo warranto* instead of a writ has uniformly been used. The Pub. Sts. c. 150, § 3, however, should, we think, be interpreted to authorize proceedings in the form of an information in the nature of the writ. See *State* v. *Leatherman*, 38 Ark. 81; *People* v. *Keeling*, 4 Col. 129; *State* v. *West Wisconsin Railway*, 34 Wis. 197; *State* v. *Gleason*, 12 Fla. 190; Spelling, Ex. Relief, § 1768 *et seq.*

The question of the constitutional right of the defendant to a trial by jury has been argued in the present case. There is, however, no statute prescribing the procedure, and no statute intimating whether in such a case as this the defendant has or has not a right to a trial by jury, and therefore no question of the constitutionality of a statute is involved in the case.

In Pub. Sts. c. 186, § 22, the attorney general is authorized to intervene in certain cases, and to demand " a judgment of fine and forfeiture," which seems to indicate that informations under this chapter are still regarded as of a criminal nature; and this is also intimated in the opinion in *Goddard* v. *Smithett*, *ubi supra.* In *Commonwealth* v. *Fowler*, 11 Mass. 339, which was an information at common law, the judgment is a judgment of ouster without a fine. See *Campbell* v. *Talbot*, 132 Mass. 174. In many of the States of this country the information in the nature of a *quo warranto* is now regarded as a purely civil proceeding. *Ames* v. *Kansas*, 111 U. S. 449, 460. It has been made so in England by St. 47 & 48 Vict. c. 61, § 15. If the present information must be considered as a criminal proceeding, undoubtedly the defendant is entitled to a trial by jury. But if it is a civil proceeding, the rights of the defendant are not so clear. Mr. Dane, 6 Abr. c. 186, art. 13, in speaking of *quo warranto* informations, says: " The law upon this subject has been very imperfectly settled by American decisions; no one is recollected in the Federal courts, and but few have been made in the State courts. The want of such is the less to be regretted; for it is believed there are few or no American statutes on this subject of informations, in the nature of the old writ of *quo warranto*,

(though there are sundry American statutes concerning informations on the penal statutes for the recovery of statute penalties,) and therefore common law principles govern mainly." The earliest Massachusetts case cited by him is *Commonwealth* v. *Athearn,* 3 Mass. 285. In speaking of the cases in New York, and of Sts. 4 & 5 W. & M., c. 18, and 9 Anne, c. 20, he says that, if these statutes " have not been adopted in Massachusetts, and no evidence is found to show they have been, these *quo warranto* informations are wholly at common law." See *People* v. *Richardson,* 4 Cowen, 97 and note.

As this court by statute has ceased to have original jurisdiction over crimes, if the present information is to be entertained by this court, we think it must be under the statute authorizing the court to issue writs of *quo warranto,* and that the information should be regarded as a substitute for a writ of *quo warranto,* and therefore as exclusively a civil proceeding. A criminal information at common law is not at the present time within the general jurisdiction of this court, because it is not a court of general original criminal jurisdiction. We need not consider what is the nature of informations brought under Pub. Sts. c. 186, § 17 *et seq.,* as these are specially authorized by the statutes.

The English practice in informations of this character, so far as they were brought under statutes passed after the colonization of Massachusetts, do not seem to us very material, as these statutes did not extend to the Colonies, and were not, so far as we know, ever adopted in Massachusetts. The practice in England, however, at common law as well as under the statutes, both in writs of *quo warranto* and in informations in the nature of a *quo warranto,* we think, always has been to try issues of fact in the country by a jury since juries were established, and this is true of many of the States of this country. Bracton's Note Book, 241, 862, 1666. Keilw. 151, pl. 47, 48, 49 ; 152, pl. 54. 1 Co. Inst. 155 (*a*), 155 (*b*). *The Abbot of Strata Mercella's case,* 9 Co. Rep. 40. *Attorney General* v. *Farnham,* Hardres, 504. 3 Nelson, Abr. 42. *Rex* v. *Bennett,* 1 Strange, 101. 14 Petersdorf, Abr. 97 *et seq.* St. 18 Edw. I., 2 Co. Inst. 494, 495. *Rex* v. *Higgins,* T. Raym. 484. *Darell* v. *Bridge,* 1 Wm. Bl. 46. *Rex* v. *Cambridge,* 4 Burr. 2010. *The King* v. *Francis,* 2 T. R.

484. *The King* v. *Mein,* 3 T. R. 596. *People* v. *Richardson,* 4 Cowen, 97, 100, note. *United States* v. *Addison,* 6 Wall: 290. *People* v. *Albany & Susquehanna Railroad,* 57 N. Y. 161. *Buckman* v. *State,* 24 Law. Ann. Rep. 806, note ; 34 Fla. 48. *Van Dorn* v. *State,* 34 Fla. 62. *People* v. *Sackett,* 14 Mich. 243. *People* v. *Doesburg,* 16 Mich. 133. *Harbaugh* v. *People,* 33 Mich. 241. *Donnelly* v. *People,* 11 Ill. 552. *Wight* v. *People,* 15 Ill. 417. *Hay* v. *People,* 59 Ill. 94. *People* v. *Golden Rule,* 114 Ill. 34. *People* v. *Rensselaer & Saratoga Railroad,* 15 Wend. 113 ; 30 Am. Dec. 33, and note.

The Declaration of Rights in our Constitution, art. 15, secures the right of a trial by jury in all controversies concerning property, and in all suits between two or more persons, except in cases in which theretofore it had been otherwise used and practised.

Without considering whether a suit or information to declare forfeited the charter of a private corporation would not be held to be a controversy concerning property within the meaning of this article, we are of opinion that a public office, such as that of president of the common council of the city of Lowell, is not property within the meaning of this article. *Attorney General* v. *Jochim,* 99 Mich. 358. Neither do we think that the present information is a suit between two or more persons within the meaning of this article, because the attorney general represents the Commonwealth. This defendant therefore has no constitutional right to a trial by jury. There is no statute conferring upon him any such right, unless it be the statute which empowers this court to issue writs of *quo warranto.* There was no established practice in Massachusetts, so far as we know, in cases of this kind, at the time of the adoption of the Constitution, and writs of *quo warranto* had then become obsolete in England. We have no doubt that the Legislature could provide for the determination of the validity of an election contest such as this by other methods than by a jury trial, and in leaving such a contest to this court to be determined on a writ of *quo warranto,* or on an information which we regard as a substitute for such a writ, we are of opinion that the Legislature did not mean necessarily to confer upon a defendant the right to a trial by jury, in cases where the Constitution did not require it.

This view is supported by the following decisions, which turn more or less upon the provisions of the Constitution or of the statutes of the State where the controversy arose. *State* v. *Minnesota Thresher Manuf. Co.* 40 Minn. 213. *State* v. *Johnson,* 26 Ark. 281. *Wheat* v. *Smith,* 50 Ark. 266. *State* v. *Lewis,* 51 Conn. 113. *Ewing* v. *Filley,* 43 Penn. St. 384. *Hilliard* v. *State,* 100 Ala. 634. Whether it may not be in the discretion of the court to grant such trial in such an information as the present, we need not consider. In *Commonwealth* v. *Dearborn,* 15 Mass. 125, the original records show that there was a verdict of a jury, but it was ultimately held that the information would not lie; and it was not an information against public officers; and in *Commonwealth* v. *Tenth Massachusetts Turnpike Co.* 11 Cush. 171, issues were submitted to a jury, but this was an information to declare forfeited the charter of a private corporation. So far as we know, there has been no usage in this Commonwealth to try the title to a public office by a jury, and the Legislature has by various statutes taken from this court in great measure its original jurisdiction over actions which require a jury trial. The tendency of legislation is to confine jury trials to the Superior Court, except when issues are submitted to a jury in equity and probate appeals. The modern practice has been to try such an information as this without a jury, although it does not appear in the cases that a jury was demanded. *Commonwealth* v. *Allen,* 128 Mass. 308. *Commonwealth* v. *Swasey,* 133 Mass. 538. *Commonwealth* v. *Harriman,* 134 Mass. 314. *Attorney General* v. *Crocker,* 138 Mass. 214.

*Exceptions overruled.*

*J. J. Hogan,* ( *W. A. Hogan* with him,) for the defendant.
*F. W. Qua,* for the plaintiff.