ATTORNEY GENERAL *vs.* PREFERRED MERCANTILE
COMPANY OF BOSTON.

Suffolk.  January 19, 20, 1905. — March 3, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Quo Warranto.  Practice, Civil.  Lottery.  Obligations redeemable in Numerical Order.  Constitutional Law.  Information.*

The answer of a corporation to an information by the attorney general in the nature of a *quo warranto*, requiring it to show by what authority it is conducting the business in which it is engaged, is not necessarily to be taken as true.

Under R. L. c. 156, § 7, a single justice of this court can report to the full court the questions of law which arise upon the record before him without deciding the questions.

The issuing by a corporation of obligations with an element of chance in their redemption, arising from uncertainty as to the number of persons holding similar obligations who will allow them to lapse and uncertainty as to the number of persons who will take new obligations and make payments thereon, is not punishable as a lottery under R. L. c. 214, § 7.

Obligations issued by a corporation, on which payments of one dollar each are to be made every week under penalty of forfeiture upon default for five successive weeks, which are redeemable each week in the order of their issue whenever an amount of money sufficient for that purpose is on hand received from ten cents set aside from every dollar paid on new obligations issued, are redeemable " in numerical order," even though numbered differently, and in an " arbitrary order of precedence without reference to the amount previously paid thereon by the holder," and their issuing is a violation of R. L. c. 73, §§ 7, 8.

R. L. c. 73, §§ 7, 8, imposing certain penalties for issuing obligations to be redeemed in numerical order or in any arbitrary order of precedence without reference to the amount previously paid thereon by the holder, is constitutional as a reasonable exercise of the police power.

An information by the attorney general in the nature of a *quo warranto* is a proper proceeding to enforce the forfeiture of the charter of a domestic corporation under R. L. c. 73, § 8, by reason of its issuing obligations to be redeemed in numerical order or in any arbitrary order of precedence without reference to the amount previously paid thereon by the holder, in violation of § 7 of the same chapter.

KNOWLTON, C. J.   This is an information in the nature of a *quo warranto*, brought against the defendant corporation, to require it to show by what authority it is conducting the business in which it is engaged.   It is a proceeding at law, and not in equity; but the defendant's answer is not necessarily to be taken as true, like the answer of a judicial tribunal to a petition for

a writ of certiorari. See *Haven* v. *County Commissioners*, 155 Mass. 467. The reservation is informal, but we treat it as made under the R. L. c. 156, § 7, to report to this court the questions of law which arise upon the record. Such a report may be made by a justice of this court, without deciding the questions. See Pub. Sts. c. 150, § 8; *Campbell* v. *Justices of the Superior Court, ante,* 509. No question of pleading is raised, and the material facts of the case are not in dispute.

The defendant was organized under the St. 1903, c. 437, for the purpose of " conducting the business of dealing in diamonds, buying, leasing and selling the same," etc. The allegation on which the informant relies is that the defendant " has grossly abused and misused its corporate authority, franchises, and privileges, and has assumed franchises and privileges not granted to it, by issuing, selling, and redeeming, as its sole business, a certain form of obligation called ' diamond lease,' " a copy of which is annexed. Another allegation, made in reference to the St. 1904, c. 427, is waived by the attorney general.

The business of the defendant is the issuing of obligations called leases, to persons who apply for them, the contract in each case being that the applicant shall pay $1 on delivery of the lease, and $1 per week thereafter, until the sum of $110 is paid in all, by which the lease becomes fully paid; that if there is a default in his payments, he shall forfeit twenty-five cents per week for each week that he is in default, and if he continues in default for five consecutive weeks, the lease shall be void and he shall forfeit all the sums paid, which will be retained by the corporation as liquidated damages. Of each dollar paid the corporation is to use seventy cents, together with the moneys received from lapses, fines and transfer fees, for the purchase and delivery of the diamonds called for by the leases, ten cents for a contingent fund, which is to be used in redeeming weekly the oldest unredeemed leases in their order whenever the amount on hand is sufficient for that purpose, and twenty cents, together with the difference between the wholesale price and the retail price of the diamonds, to defray the expenses of managing the business. The corporation agrees to call in and redeem as many of the oldest outstanding, unredeemed leases as the funds will permit, each week, by the delivery of a commercial, white, clear

and flawless diamond, of the proper weight and value for the week in which the redemption occurs. A lease calling for a payment of $110 in all by the holder, entitles him to receive a diamond two carats in weight, worth $200. It appears, also, that the company has represented to its customers that it will furnish purchasers for the diamonds to which lessees are entitled, who will pay $160 for each one of the value of $200, and that, whenever requested, it has either taken them or procured others to take them at that price.

There is no source from which to obtain money to supply diamonds, or the money to be paid instead of them, to leaseholders, except the payments of the leaseholders themselves. The company promises to every leaseholder a diamond worth $200, or cash to the amount of $160, for a payment of $110. But these diamonds and moneys can only be delivered to the leaseholders when the funds appropriated to that purpose enable it to be done. Twenty per cent of the receipts from regular payments are taken at once by the corporation for conducting the business. The amount received from forfeitures on lapsed contracts goes to meet obligations, and it is manifest that, without a large number of lapses or of takers of new obligations or both, the business would quickly come to an end, leaving the late comers with no returns for their payments. Although a few may make gains, the certainty of great loss to the deluded investors as a class is obvious at a glance. A scheme more injurious and misleading, in its effect upon that part of the public who are easily entrapped by a plausible offer to give much for little, hardly can be conceived. But the question now before us is whether the business is forbidden by law.

It is contended by the attorney general that the corporation is conducting a lottery, and that its managers are punishable criminally under the R. L. c. 214, § 7. To come within this section, the money or property must be disposed of "with intent to make the disposal thereof dependent upon or connected with chance by lot, dice, numbers, game, hazard or other gambling device." The element of chance, entering into the payments in this case, arises from the uncertainty as to the number of persons who will allow their contracts to lapse, and as to the number who will take new contracts from the company

and make payments to it after the issuing of the contract in question.

There are cases which give some support to the contention that this kind of uncertainty is chance, which will make the business a lottery within the meaning of this statute. *Public Clearing House* v. *Coyne*, 194 U. S. 497, 515, is a case of this kind. The master to whom that case was referred held a scheme like the one now before us to be a lottery, and the opinion of the court confirmed his view. Only a part of the justices seem to have sat at the argument. One of these dissented, and those who concurred in the decision concurred only in the result. The statute in question was one in regard to a wrongful use of the mails, and the postmaster general, in making the order in question, " acted upon the theory that the complainant was engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretences, etc., and not in conducting a lottery." We infer that some of the concurring justices took the view of the postmaster general. The case of *United States* v. *McDonald*, 59 Fed. Rep. 563, which was affirmed by the Circuit Court of Appeals in 63 Fed. Rep. 426, was put by the Appellate Court upon a narrower ground than that stated by the judge before whom the case was tried. In that case there was a use of multiple numbers, which introduced a specific element of chance, such as is common in lotteries. In *McLaughlin* v. *National Mutual Bond & Investment Co.* 64 Fed. Rep. 908, *United States* v. *Fulkerson*, 74 Fed. Rep. 619, and *State* v. *Interstate Savings Investment Co.* 64 Ohio St. 283, the chance relied on as constituting the scheme a lottery was found in an uncertainty as to the order in which obligations were redeemable, which does not exist in the present case. It has been held repeatedly that such a chance as the uncertainty in regard to the number of contracts that will be allowed to lapse, or the number of new contract takers who will come into a scheme of this kind, is not a chance which makes the scheme a lottery. *Equitable Loan & Security Co.* v. *Waring*, 117 Ga. 599. *Union Investment Association* v. *Lutz*, 50 Ill. App. 176. See *United States* v. *Rosenblum*, 121 Fed. Rep. 180 ; *People* v. *Fallon*, 152 N. Y. 112 ; *Horner* v. *United States*, 147 U. S. 449, 458. We are of opinion that the business conducted by the

defendant does not constitute a lottery, within the meaning of R. L. c. 214, § 7.

The attorney general relies upon R. L. c. 73, §§ 7, 8, and cites *Attorney General* v. *Pitcher*, 183 Mass. 513. We are of opinion that the defendant's business is conducted in violation of this statute. The corporation issues obligations " which are by the terms thereof to be redeemed in numerical order or in any arbitrary order of precedence without reference to the amount previously paid thereon by the holder thereof." The order in which the applications are made, which is the order in which they are redeemable, may well be called a numerical order, even though they are numbered differently. They are to be redeemed in an arbitrary order of precedence, for the word " arbitrary," as here used, means nothing more inflexible than a numerical order, or the order in which the applications were made. The case last cited is almost identical with the present case in its relation to this statute. The purpose of the act is to prevent the issuing or negotiation of obligations which are redeemable in an established order, such that the result will be uncertain, involving a kind of chance in reference to the amount paid out or invested to preserve the holder's rights, and in reference to the relative returns which will be received. Leases may be taken at one time in so great numbers, and payments of instalments be made so rapidly, that some of the earlier leases will be redeemed long before they are fully paid. At another time there may be a lack of funds, with a long interval between the redemption of the contracts upon two successive applications, or the earlier one may be redeemed and the later one never redeemed. It is evident that sometimes redemption would come to those who had paid but little, and at other times it would come only long after full payment. We think that this arbitrary order of precedence, taken in connection with the uncertainty as to the time when the redemption will occur, if it occurs at all, is an order and a redemption without reference to the amount previously paid by the holder, within the meaning of this statute.

The defendant contends that the statute is unconstitutional. We do not deem it necessary to discuss this question at length. The act was passed in the exercise of the police power, to prevent methods and processes which are exceedingly detrimental

to the people, and which are fraudulent in substance and effect, through the representations which are an almost necessary part of the business, some of which appear in the printed exhibits before us. See *Commonwealth* v. *Huntley*, 156 Mass. 236 ; *Plumley* v. *Massachusetts*, 155 U. S. 461.

By § 8 of this chapter, a violation of the provisions of the preceding section, by a domestic corporation, operates as a forfeiture of its charter. It is not denied that this is a proper kind of proceeding to enforce the forfeiture of the franchise of a corporation. *Attorney General* v. *Salem*, 103 Mass. 138, 139. *Campbell* v. *Talbot*, 132 Mass. 174, 177. *Attorney General* v. *Sullivan*, 163 Mass. 446.

*Judgment of ouster.*

*B. B. Jones & J. S. Allen, Jr.*, for the defendant.

*F. H. Nash*, Assistant Attorney General, for the plaintiff.

