## Union Investment Association v. Lutz et al.

1. ASSOCIATIONS FOR INVESTMENT—*Application of the Principles—Joint Tenancy—Legality.*—An investment association which applies the principle of joint tenancy to the investments by the subscribers, the survivorship depending upon default of the members, instead of death, is neither prohibited by statute nor common law.

2. ASSOCIATIONS FOR INVESTMENT—*The Default Theory.*—An investment association in which the theory on which profit is promised, is that of all of the subscribers, a large portion, one-half or more, will fail to keep up their monthly dues, and whatever money they may have paid will go into the hands of those who do not so fail, is not prohibited by law.

3. ASSOCIATIONS FOR INVESTMENT—*Sufficiency of a Bill for a Receiver.*—A bill filed by thirteen plaintiffs "on behalf of themselves and all other bondholders" in which all that is averred as to the interest of the plaintiffs, is that they are subscribers and holders of bonds of various denominations issued by the association, is insufficient, and an order appointing a receiver under such a bill will be reversed.

**Memorandum.**—Order appointing a receiver. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1892. Opinion filed March 18, 1893.

Statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, WEIGLEY, BULKLEY & GRAY, ATTORNEYS.

It is one of the maxims of equity, that he who comes into equity, must come with clean hands. If, therefore, as

alleged, the defendant association was organized for the purpose of conducting an illegal business, and one which would come within the prohibition of the law on account of its gambling character, then the complainants and each and every one of them, who engaged in business with the defendant association and purchased its bonds, with full knowledge of the character of the business are *participes criminis.*  Miller v. Marckle, 21 Ill. 152; Scott et al. v. Maglouglin et al., 133 Ill. 33; Kirkpatrick v. Clark, 132 Ill. 342; Dunaway v. Robertson, 95 Ill. 419; Riedle v. Mulhausen, 20 Brad. 68.

Appellees' Brief, Frederick S. Baker, Attorney.

The judgment of a lower court in continuing an injunction (and in appointing a receiver as incident thereto) more especially after an answer, will not be controlled except in a case of manifest abuse of discretion, or mistake of law. Hilliard on Injunctions, p. 107, Sec. 6.

On the subject of the appointment of receivers *in limine*, in case of fraud, threatened waste, or loss or mismanagement of fund, we cite Spelling on Private Corporations, Sec. 853; High on Receivers, 2d Ed., Secs. 3, 4, 5.

Opinion of the Court, Gary, P. J.

This is an appeal under the act of June 14, 1887, from an interlocutory order appointing a receiver of the assets of the association above named.

From the great mass of verbiage in the record, it appears that the scheme of the association is that it issues bonds of three classes, called respectively, A, B and C. A, for $200, B, $1,000, and C, $500, for which the subscribers pay in class A, $5 entrance fee and $1 dues every month thereafter; class B, $10 entrance and $5 dues, and class C, $7 entrance and $2 dues, and a failure to pay dues is the end of that subscriber's interest in the scheme.  Seventy per cent of the money received is kept as a redemption fund; ten per cent is kept by the association in the name of expenses and twenty per cent set apart for investment.

Whenever from that seventy per cent received in any class

(the funds of each class being kept separate), there is money enough on hand to pay the first outstanding bond of that class, it is paid. There are minor features not necessary to notice.

The theory on which profit is promised is, that of all the subscribers, a large part, half or more, will fail to keep up their monthly dues, and so whatever money they may have paid will go to pay the bonds of those who do not so fail.

It is probably true that if the managers of the scheme prove faithful, the persevering subscribers will reap a considerable profit. Whatever may be thought of the wisdom of subscribers, there seems to be nothing contrary to law in the scheme; it applies the principle of joint tenancy to the investments by the subscribers, the survivorship depending upon default instead of death. It is the Tontine principle which Rapp applied in his harmony society, which Gibson, C. J., speaking for the Supreme Court of Pennsylvania, said was "prohibited neither by statute nor the common law." Schriber v. Rapp, 5 Watts, 351.

The bill in this case is not such a one as justifies any inquiry as to the conduct of the managers. It is filed by thirteen complainants " on behalf of themselves and all other bondholders," etc., and all that is averred in it as to the interest of the complainants is that they are "subscribers to, and holders of bonds of various denominations issued by," the association.

There is no statement of what bonds any of them hold, and as the funds to redeem one class are to be kept separate from those to redeem the other classes, there is probably no common interest. The bill is verified by Charles Dockery, who, although his name is signed to the bill, is not one of the complainants named in it, and is supported by the joint affidavit of fifteen persons who, " being first duly sworn, on oath says that he is at present, and for a long time past, to wit, two years, has been, an owner of bonds issued by the defendant association, and is one of the complainants in the above entitled cause and is familiar with the facts involved in said litigation."

If Julia and Lotta are the names of women, two of those affiants are not "he," and without an if, ten of them are not complainants.

What would be thought of several complainants joining (as they may, Wait Fr. Con. Sec. 108, Ballentine v. Beall, 3 Scam. 203,) in a judgment creditor's bill, averring that they had judgments in a certain court against the defendant upon which executions had been returned unsatisfied, without any more description?   Yet they would have a common interest.

The case as to the twenty per cent set apart for investment is so left in the dark that no inference can be drawn as to whom it should go in liquidating the affairs of the association, but as to any of the seventy per cent on hand of either class, it would seem that the earliest bond of either class should be first paid, exclusive of the others.   From the bill it can not be told that, if true, either one of the complainants is entitled to anything.

No enthusiasm as to supposed public policy should prevent adherence to necessary methods of procedure.

The order appointing a receiver is reversed and the cause remanded, with directions to return the assets if they have been put into the possession of the receiver.